### DE RIVAFINOLI *vs.* CORSETTI..

The complainant is not entitled to a writ of ne exeat, on a bill for the specific performance of a contract, previous to the time at which the contract is to be performed, and before any right of action has accrued thereon, either at law or in equity, against the defendant.

A bill quia timet, upon a contract for personal services to be performed at a future time, cannot be filed for the purpose of obtaining equitable bail, although there is danger that the defendant may leave the state before the time for the performance of the contract arrives.

The writ of ne exeat is in the nature of equitable bail; and to entitle a complainant to such bail, there must be a present debt or duty, or some existing right to relief against the defendant, or his property, either at law or in equity.

October 12.

THIS case came before the chancellor on an order for the complainant to show cause why a ne exeat granted against the defendant should not be discharged, or the amount for which the defendant was held to bail reduced. The bill, which was filed in September, 1833, stated that the defendant, in the March preceding, had agreed with the complainant, as manager of the Italian theatre in the city of New-York, to sing, gesticulate and recite, in the capacity of *primo basso*, in all the operas, serious, semi-serious and comic, farces, oratorios, concerts, cantatos and benefits, which should be ordered by the complainant, or his authorized agents, in any city of the United States, where the complainant should think proper; and that he should be present at the times which

should be appointed for rehearsals, and contribute to the interest and good conduct of the enterprise, submitting himself to the regulations made by the complainant, and to the fines in such regulations established, for the term of eight months, commencing on the first of November, 1833. For which singing, gesticulating, reciting, &c. the complainant agreed to pay him $1192, in sixteen half monthly payments; each payment to be made in advance, at the commencement of the half month for which the same was to be paid; and to allow the defendant one benefit, he bearing half the expense thereof. And that the defendant also agreed not to make use of his talents in any other theatre, or public hall, without the permission of the complainant, or his agents. For the performance of which agreement each party bound himself to the other, under the penalty of a fine of one third of the salary of the defendant; which fine was to be paid by the party in default, without objection, or exception. The bill further alleged that the complainant had entered into a contract with the trustees of the Italian opera house, in New-York, under heavy penalties, to commence the performance of Italian operas, with a first rate company, on the first of November, 1833; and that he had engaged the defendant as one of such company, and had gone to Europe to procure others to make up a *troupe*, complete in all its departments. That the defendant was a skilful musician, and was well qualified to sing, perform and exhibit Italian operas, in the capacity in which he had been engaged by the complainant; who had made all his arrangements, and his selections of other performers, in this country and in Europe, on the faith of the defendant's performing his engagement. That the services of the defendant were necessary, in the capacity in which he was engaged, to make up the *troupe*, or company, and his place could not be supplied without great expense and delay. And also that the complainant would be exposed to great damage, loss and inconvenience, and be liable to fail in his contract to obtain a first rate company by the first of November, if the defendant did not perform his engagement. The bill further charged

that the defendant, since the making of the agreement, and in violation thereof, had entered into a contract with another person to go to the Havanna as an opera singer, and to be there on the same day on which, by his agreement with the complainant, his services were to commence at New-York; and that he was about to leave this state for Cuba, in fraud and violation of the rights of the complainant. The bill therefore prayed for a specific performance of the contract with the complainant; that the defendant might be decreed to sing, gesticulate and recite, in the capacity of *primo basso*, according to his said agreement; that he might be restrained from leaving the state; and for general relief. The bill also prayed for a ne exeat; which was granted by an injunction master. And the defendant being unable to find bail, was committed to prison. In the affidavit upon which the order to show cause in this case was granted, the defendant denied that he had made an engagement to go to the Havanna; but he did not deny his intention to go there, in violation of his engagement with the *complainant*. He stated, however, that he was under a previous engagement for three years, to J. Montresor, who now claimed his services; and that he was induced to enter into the engagement with the complainant in consequence of a fraudulent misrepresentation by him, that he had the permission of Montresor to engage his, the defendant's services. This last allegation was denied by an affidavit of the complainant; who stated therein that, at the time of making the agreement, the defendant informed him that his engagement with Montresor had terminated, in consequence of the inability of the latter to perform the contract on his part.

*W. Hall,* for the complainant. The contract in this case for personal services is so definite and certain that there can be no difficulty in rendering a decree for its specific performance. The bill alleges that the services are of so peculiar a character that they cannot be procured from any person save the defendant. A mere compensation in damages would not be an adequate remedy to the complainant. It is therefore a proper case for specific performance. Decrees for specific per-

1833.

De Rivafinoli
v.
Corsetti.

formance are made without reference to the subject matter of the contract; to transfer debts; (1 *Sim. & Stu.* 607.) For the good will of trade; (*Id.* 74.) To build houses; (2 *Vern.* 322. 2 *Eq. Ab.* 17. 3 *Atk.* 515. 1 *Ves.* 12, 461. 3 *Id.* 184. 8 *Id.* 161, 2, 3. 3 *Swan.* 437.) To indemnify; (6 *John. Ch.* 405.) To execute articles of separation; (3 *Brc. C. C.* 614.) To create a life annuity. (6 *Mad.* 253.) Specific performance of contracts relating to stocks and personal property is generally refused; not on account of the nature of the property, but because in all such cases the remedy in damages is adequate. (1 *Sim. & Stu.* 607.) The principle of specific performance is, that the legal remedy is inadequate or defective. (8 *Ves.* 159.) A specific execution of a contract will be decreed, where damages would not answer the intention in making the contract. (*Davis* v. *Hone,* 2 *Sch. & Lef.* 341.) Equity cannot supply the terms of a contract; but if it is complete in itself, equity can execute it. (*Ormond* v. *Anderson,* 2 *Ball & Beat.* 369.) If a person contracts to do a thing which he may do himself, or has the means of compelling others to do, equity will compel him to do it. (*Costegan* v. *Hastler,* 2 *Sch. & Lef.* 166.) A decree for specific performance of a contract by a party who is competent to execute it, its nature and circumstances being unobjectionable, is as much of course in equity as the recovery of damages at law. (*Hall* v. *Warren,* 9 *Ves.* 608.) The case in 1 *Brown's P. C.* 140, is in point. There a company employed A. under a contract for life, to be their manager and overseer, at a given salary. He having been dismissed, brought his bill for specific performance, and it was decreed. If the suit had been by the company against their manager, seeking specific performance, it would have been our case precisely. In these cases of specific performance the remedy must be mutual. (1 *Sim. & Stu.* 607. *Id.* 174. 1 *Turn. & Russ.* 78.) If this is a case for specific performance, it is a proper case for a ne exeat. (*Morris* v. *M'Neil,* 2 *Russ. Rep.* 604. *Boem* v. *Wood,* 1 *Turn. & Russ.* 332. *Raynes* v. *Wise,* 2 *Merivale,* 472.) If any difficulty should occur in enforcing a specific performance in this case, the court might direct an order to be entered, as in the case of *Denton* v. *Stewart,* (1 *Cox,*

258.) That case was an agreement for the sale of a house. It appeared that the defendant had actually sold it to another for value, without notice; so that a specific performance was beyond his power. The court ordered the master to inquire as to the damages of the complainant, and a decree was entered for damages and costs. The clause as to stipulated damages in this contract is almost nugatory for any purpose, as construed by the common law courts. The object of our contract was services, not damages. The defendant promised services ; we expected services, and money will not supply the place of the defendant's services. The damages that will result from the defendant's default, though uncertain as to the precise amount, will certainly be much greater than the sum stipulated in the contract ; and we have a right to come into this court on that ground, and ask a specific performance, in the nature of relief against the penalty of a bond. The case of a bond, conditioned to convey lands, is of the same character as this contract. (*Mos.* 37.) Specific performance of such conditions are decreed. Neither equity nor good morals hold a party free to violate a law or a contract, and pay the penalty. Equity looks through every thing to the object of the contract, which, in this case, certainly was not to secure a penalty.

*W. Mulock,* for the defendant. It is plain that the specific performance asked for by the complainant is not the object, as the pretended relief would come too late. There being no debt due, there can be no bail, as equity follows the law in that respect. If even damages would sustain the writ, there are none sworn to. If we were at law after a breach, on the state of facts which appear here, the penalty alone could be recovered. It is not charged in the bill that the contract is signed. To take away liberty, full right must appear. No case can be found where specific performance of personal labor has been decreed. A court of chancery grants nothing useless. So it refuses specific performance of agreements to form partnerships, or to arbitrate. Compulsory labor is worth nothing. Suppose the defendant sing out of time ; where will its use be, when a decree is had ? A man

cannot be forced to fulfil a contract for personal labor. The mere suggestion that the defendant has declared his intention to go abroad, without executing a trust, does not furnish a sufficient case for a ne exeat. (5 *Ves.* 591.) The complainant must state in his bill that his debt will be endangered. (7 *Ves.* 417. 3 *Bro.* 218.) The writ of ne exeat being considered in the nature of equitable bail, it will not be granted under circumstances that would not entitle to bail at law ; therefore, in case of alimony, it will only issue for arrears actually due, (*Haffey* v. *Haffey,* 14 *Ves.* 261. *Flack* v. *Holme,* 1 *Jac. &amp; Walk.* 407.) Unless it is clearly made out that there must be a specific performance, a writ of ne exeat will not be granted. (*Morris* v. *M'Neil,* 2 *Russ.* 604.) Where the answer showed prima facie evidence that nothing was due, the writ of ne exeat was discharged. (*Grant* v. *Grant,* 3 *Russ.* 598. *Leo* v. *Lambent,* 3 *Id.* 417.) The affidavit ought to state that the defendant is going abroad to avoid the jurisdiction of the court. (*Etches* v. *Lance,* 7 *Ves.* 417.) In *Gardner* v. ———, (15 *Ves.* 444,) it was held, that an attorney who owed a debt could not be held to bail. The court say, in *Gardner* v. *Edwards,* (5 *Ves.* 591,) that it is too general a ground for supporting this writ, that it will operate to prevent injustice. If the complainant does not make such an affidavit as would entitle him to bail at law, he will not be entitled to bail in chancery. (1 *Jac. &amp; Walk.* 405.) In a bill for specific performance of an agreement, the complainant must charge that the agreement was signed by the party, or his agent lawfully authorized. (*Howard* v. *Braithwaite,* 1 *Ves. &amp; Bea.* 208.) Equity will not decree execution of articles, unless obtained fairly, without surprise or circumvention. (*Phillips* v. *Duke of Bucks,* 1 *Vern.* 227.) So specific performance will be refused, if the agreement is not just and regular, though in part executed ; or if it be tainted with fraud. (*Young* v. *Clark, Prec. in Ch.* 538. *Rochfort* v. *Creswick,* 2 *Bro. P. C.* 296. 1 *Id.* 171.)

THE CHANCELLOR. The material facts alleged in the complainant's bill are not denied ; and for the purpose of this application, they must be taken to be true. There is an affida-

*1833.*

De Rivafinoli
v.
Corsetti.

vit, annexed to the bill, that the defendant has declared his intention of going to the Havanna; and the defendant has not denied such intention, although he swears he has not made any engagement to go there.   Upon the merits of the case, I suppose it must be conceded that the complainant is entitled to a specific performance of this contract ; as the law appears to have been long since settled that a bird that can sing and will not sing must be made to sing.  (*Old adage.*)   In this case it is charged in the bill, not only that the defendant can sing, but also that he has expressly agreed to sing, and to accompany that singing with such appropriate gestures as may be necessary and proper to give an interest to his performance.   And from the facts disclosed, I think it is very evident also that he does not intend to gratify the citizens of New-York, who may resort to the Italian opera, either by his singing, or by his gesticulations.   Although the authority before cited shows the law to be in favor of the complainant, so far at least as to entitle him to a decree for the singing, I am not aware that any officer of this court has that perfect knowledge of the Italian language, or possesses that exquisite sensibility in the auricular nerve which is necessary to understand, and to enjoy with a proper zest, the peculiar beauties of the Italian opera, so fascinating to the fashionable world. There might be some difficulty, therefore, even if the defendant was compelled to sing under the direction and in the presence of a master in chancery, in ascertaining whether he performed his engagement according to its spirit and intent.   It would also be very difficult for the master to determine what effect coercion might produce upon the defendant's singing, especially in the livelier airs ;  although the fear of imprisonment would unquestionably deepen his seriousness in the graver parts of the drama.  But one thing at least is certain ;  his songs will be neither comic, or even semi-serious, while he remains confined in that dismal cage, the debtor's prison of New-York. I will therefore proceed to inquire whether the complainant had any legal right thus to change the character of his native warblings, by such a confinement, before the appointed season for the dramatic singing had arrived.

From the terms of the agreement, as stated in the bill, it is evident that there can be no breach thereof until the 1st of November next, when the engagement of the defendant was to commence. Even when that time arrives, the complainant will not be entitled to the defendant's services until he shall have paid, or tendered to him, a half month's salary in advance. A specific performance cannot be decreed, upon the present bill, because at the time it was filed, the complainant had no right of action against the defendant, either at law or in equity. And I believe this court has never yet gone so far as to sustain a bill quia timet, because the complainant apprehended that the defendant might not be willing to perform an engagement for personal services; and where, from the peculiar nature of those services, they could not be performed until a future day. The writ of ne exeat is in the nature of equitable bail; and to entitle the complainant to such bail, there must be a present debt or duty, or some existing right to relief against the defendant or his property, either at law, or in equity. The writ in this case therefore was prematurely granted; and the rule to discharge it must be made absolute.