THE WM. ROGERS MANUFACTURING COMPANY AND
ANOTHER *vs.* FRANK W. ROGERS.

Hartford Dist., Jan. T., 1890.  ANDREWS, C. J., CARPENTER, LOOMIS
TORRANCE and THAYER, Js.

Courts of equity will not undertake to enforce a specific performance of a
contract for ordinary personal services.

But where the services are special or extraordinary or purely intellectual,
or peculiar and individual in their character, the court will grant an
injunction in aid of a specific performance.

The defendant agreed that he would serve the plaintiffs for twenty-five
years under the direction of their general manager, traveling for them
as directed, and rendering such services as secretary or other officer as
they might desire; and that he would not be engaged, or allow his
name to be used, in any other hardware or cutlery business, either as
manufacturer or seller, but would give his entire time and services to
the interests of the plaintiffs.  In a suit for an injunction against the
defendant's leaving the employment of the plaintiffs and engaging in
any other hardware or cutlery business, or allowing his name to be
used in any such other business, in which the plaintiffs set out the de-
fendant's contract and averred that his services had, by his familiarity
with their business and customers, become of special value to them,
that he was negotiating with certain rival manufacturers to go into
their service and to allow his name to be used as a stamp upon their
wares, and intended to use for their advantage his knowledge of the
plaintiffs' business, and that his doing so would cause irreparable dam-
age to the business of the plaintiffs, it was held on demurrer to the
complaint—

1. That it did not appear that the services were of such a special and indi-
vidual character that a court of equity ought to grant the injunction
prayed for.

2. That it did not appear that the plaintiffs had a right to the defendant's
name as a trade-mark; and that if they had, they could have no diffi-
culty in protecting their ownership of it.

3. That it did not appear that the use of the defendant's name by other
manufacturers would do the plaintiffs any injury beyond what might
grow out of a lawful business rivalry; and that if, by reason of extra-
neous facts, such use would be wrongful or specially injurious, such
facts ought to have been set out, so that the court might pass upon them.

4. That no facts were alleged which would bring the case within the rule
that an employee should be enjoined from disclosing business secrets
which he has learned in the course of his employment and has con-
tracted not to divulge.

[Argued January 15th—decided February 17th, 1890.]

SUIT for an injunction to restrain the defendant from leaving the employment of the plaintiffs or engaging in other business, in violation of a contract; brought to the Superior Court in Hartford County.

The plaintiffs were the Wm. Rogers Manufacturing Company and the Rogers Cutlery Company, both joint stock corporations located in Hartford, and carrying on business under one management, the manager being William H. Watrous. On the 17th of March, 1879, the following contract was entered into between Watrous, acting as agent of the plaintiff companies, and the defendant.

"1. That said companies will employ said Rogers in the business to be done by said companies, according to the stipulations of said agreement, for the period of twenty-five years therein named, if said Rogers shall so long live and discharge the duties devolved upon him by said Watrous, as general agent and manager of the business to be done in common by said companies, under the directions and to the satisfaction of said general agent and manager; it being understood that such duties may include traveling for said companies, whenever in the judgment of said general agent the interests of the business will be thereby promoted.

"2. The said companies agree to pay said Rogers for such services so to be rendered, at the rate of $1,000 per year for the first five years of such services, and thereafter the same or such larger salary as may be agreed upon by said Rogers and the directors of said companies, said salary to be in full during said term of all services to be rendered by said Rogers, whether as an employee or an officer of said companies, unless otherwise agreed.

"3. The said Rogers, in consideration of the foregoing, agrees that he will remain with and serve said companies under the direction of said Watrous, as general agent and manager, including such duties as traveling for said companies, as said general agent may devolve upon him, including also any duties as secretary or other officer of either or both of said companies, as said companies may desire to have him perform at the salary hereinbefore named, for the first

five years, and at such other or further or different compen-
sation thereafter, during the remainder of the twenty-five
years, as he, the said Rogers, and the said companies may
agree upon.

" 4. The said Rogers during said term stipulates and agrees
that he will not be engaged, or allow his name to be em-
ployed, in any manner, in any other hardware, cutlery, flat-
ware or hollow ware business, either as manufacturer or
seller, but will give, while he shall be so employed by said
companies, his entire time and services to the interests of
said common business, diminished only by sickness and such
reasonable absence for vacations or otherwise as may be
agreed upon between him and said general agent."

The complaint set out the foregoing contract, and a con-
tract of March 14th, 1879, between the plaintiff companies,
by which they agreed for twenty-five years to do certain
business on their joint account and under one management,
the defendant then being secretary of the Rogers Cutlery
Company, one of the plaintiffs. The complaint then pro-
ceeded as follows :

After the execution of said last named contract, in order
to make it desirable to the defendant to become and continue
permanently interested in and connected with the new bus-
iness thereafter to be severally done by said corporations
under the control of said Watrous as general manager there-
of as provided in said contract, and to prevent him from al-
lowing his name to be used in conflict therewith, and as a
consideration for the performance of his own contract addi-
tional to those named therein, the said Watrous, in and by
another contract with the defendant dated March 17th, 1879,
conveyed to the defendant the equitable interest and owner-
ship in one hundred and sixty shares of the capital stock of
the Rogers Cutlery Company aforesaid, upon the terms and
conditions named in the agreement; and the defendant has
since, and prior to the date of this complaint, received upon
said shares of stock $2,995.99 in dividends, and still remains
entitled to the receipt of continued dividends thereon and

to full conveyance of said shares according to the terms of
said contract.

In accordance with said agreement the defendant entered
the service of the plaintiffs, and therein has continued until
the present time as the secretary of each of said companies
and in the discharge of the duties therein so as aforesaid
agreed by him to be performed, and from the date thereof to
the present time the provisions of said agreement (except
as hereinafter stated) have been executed both by the
plaintiffs and the defendant; the salary of the defendant has
by mutual agreement been raised to $2,000 per annum, and
the services of the defendant, by reason of his familiarity
with the plaintiffs' business and knowledge of their custom-
ers, acquired by his said employment since said 14th day of
March, 1879, have become and now are of special value to
the plaintiffs; and the plaintiffs desire that the defendant
should continue in their employ and faithfully keep and
perform all the obligations of said agreement.

The plaintiffs are informed and believe, and therefore
aver, that the defendant secretly and with intent that the
fact should not be known to the plaintiffs, now is and for
some time past has been conspiring and negotiating with
sundry persons and corporations to the plaintiffs unknown,
but all of whom, as the plaintiffs believe, are their competi-
tors in business, with the purpose and intent of engaging, in
connection with such persons and corporations, in the manu-
facture and sale of cutlery and silver-plated flat and hollow
ware, and with the intent and purpose of allowing his name
to be used and employed in connection with such business
as a stamp on such silver-plated ware, and with the further
intent of using in the interest of and for the advantage of
such persons all his knowledge and information of the plaint-
iffs' business and of their customers which he has obtained
by virtue of his employment as aforesaid.  And the plaintiffs
further say that the defendant threatens to leave their em-
ploy and to engage with such other parties in the business
of manufacturing and selling cutlery and silver plated flat
and hollow ware, and to allow his name to be used and em-

ployed in connection with such business as a stamp upon such silver-plated goods and otherwise; all of which would be in violation of the defendant's agreement with the plaintiffs, and would deprive the plaintiffs of all the benefits and advantages secured to them by said agreement and to which they are justly entitled. And the plaintiffs aver that such conduct and doings of the defendant would occasion great and irreparable loss and damage to the business of the plaintiffs, and the use of defendant's name as a stamp or trade-mark on said cutlery, silver-plated flat and hollow ware as aforesaid, would cause the same to so resemble the similar goods made and sold by the plaintiffs and stamped with the plaintiffs' stamps and trade-marks, of which the most prominent part is the word "Rogers," as that the same would be liable to be mistaken for those of the plaintiffs, and would be liable to be sold and would be sold as and for goods made and sold by the plaintiffs, and thereby great and special loss and damage would be done to the plaintiffs in their business, for which there would be no adequate remedy at law. And they aver that the defendant has little, if any, property, and substantial damages, if recovered, could not be enforced at law.

The plaintiffs claim an injunction restraining the defendant from leaving the employment of the plaintiffs, and in any manner engaging in any other hardware, cutlery, flat ware, or hollow ware business, and from allowing his name to be employed in any manner in any such other business than that of the plaintiffs.

The defendant demurred to the complaint, assigning the following grounds of demurrer:—

1. The contract therein set up is one-sided and unequal in that, among other things, it does not bind the plaintiffs for any definite time.

2. It sets up an affirmative engagement not a proper subject for equitable relief, and therefore the negative relief prayed for cannot be afforded.

3. The contract set up is not a contract for the employment of services involving special skill and training, nor for

services involving the exercise of high powers of mind peculiar to the defendant.

4. An injunction against the defendant as prayed for would be mischievous and against public policy.

The case was heard before *Fenn, J.*, and the complaint held insufficient and judgment rendered for the defendant. The plaintiffs appealed.

*F. Chamberlin,* with whom was *E. S. White,* for the appellants.

1. The contract is not one-sided and unequal, as the defendant claims in his first cause of demurrer, but it binds both parties for a definite time and in precisely the way the parties chose and adopted to establish their mutual obligations. But if it did lack mutuality, that would not be by any means decisive, for while there is a general rule of equity that the element of mutuality must exist to justify specific performance (which is something more than we claim here), there are many and clear exceptions to that rule. *Clason* v. *Bailey,* 14 Johns., 484; *In re Hunter,* 1 Edw. Ch., 1; *Van Doren* v. *Robinson,* 16 N. Jer. Eq., 256; *Hawralty* v. *Warren,* 18 id., 124; *Woodruff* v. *Woodruff,* 44 id., 349.

2. But the defendant, in his second cause of demurrer, says the contract sets up an affirmative engagement, not a proper subject for equitable relief, and that therefore the negative relief prayed for cannot be afforded. To this we reply that the mere fact that the court could not grant affirmative relief, covering the whole contract, would be no reason whatever why the relief which is clearly within its power should not be given. " Where a contract contains covenants to do certain acts, and also to abstain from doing certain other acts, the court has jurisdiction to restrain the breach of the negative covenants, though there may be no jurisdiction to compel specific performance of the affirmative covenants." 2 Story's Eq. Jur., § 722 *a.* See also 3 Wait's Actions & Defences, 693; *Lumley* v. *Wagner,* 1 DeG. M. & G., 604; *Stiff* v. *Cassell,* 20 Jurist, 348; *Kemble* v. *Kean,* 3 Sim., 333.

3. It is claimed that "the contract set up is not a contract for the employment of services involving a high degree of skill and training, nor for services involving the exercise of high powers of mind peculiar to the defendant." The defendant had been secretary of the Rogers Cutlery Co., and in accordance with his agreement he entered the service of the plaintiffs, and therein continued until the bringing of this action, as secretary of both companies. His salary, originally $1,000, had been increased to $2,000, "and the services of the defendant, by reason of his familiarity with the plaintiff's business and knowledge of their customers, acquired by said employment, had become, and were at the date of the complaint, of especial value to the plaintiffs." The skill and training as secretary, which would result from eight years and more in this official and executive capacity, should count for something, and unquestionably separated the defendant from the class of mere laborers, whose services can be replaced from the market at any time at the market rate. His services were peculiar and individual in their character, as contrasted with services "material and mechanical," and were therefore of themselves of the kind in which a court of equity will interfere by injunction in aid of a special performance. In this special, peculiar and individual employment the defendant had obtained knowledge of the plaintiffs' business and of their customers, and the thing which he threatened and had conspired with others to do, and intended to do, was to leave the employment of the plaintiffs and use the skill which he had acquired and the knowledge which he had obtained of the plaintiffs' business and customers for the advantage of himself and his co-conspirators in establishing and carrying on a rival business, using his name as a trade-mark and otherwise in such manner that the goods to be made by the conspirators would so resemble the goods of the plaintiffs as to be mistaken therefor. And he proposes to go out from the plaintiffs' business with $4,000 worth of the plaintiffs' capital stock, upon which he has received $3,000 in dividends, in his pocket. It is alleged, and so admitted by the demurrer, not only that

it is in violation of his agreement, and that it will deprive the plaintiffs of all advantage of the agreement, but also that the damage and loss would be great and irreparable, and that the plaintiffs have no adequate remedy at law. It is also alleged and admitted that the defendant "has little, if any, property, and that substantial damages, if recovered, could not be enforced at law."

4. But the defendant says that "an injunction against the defendant as prayed for would be mischievous and against public policy." That is, that this injunction, restraining the defendant from engaging in any other similar business than this, in which he is engaged by his agreement, is against public policy. The cases in which it has sometimes been held that it was against public policy that a man should be unreasonably restrained from doing business, are where a man sells himself out of his special business and agrees not to engage in it again. It used to be held, perhaps more vigorously and broadly than it is now, that it was for the interest of the public that one should somewhere follow the business which he was trained to and familiar with. But it has never been held that where a man has agreed to follow a business in one place, or with one partner or set of partners, it was against public policy that he should perform his agreement. Story (2 Eq. Jur., § 722,) gives an instance among many, as follows:—"When one partner contracts that he will exert himself for the benefit of the partnership, a court of equity cannot compel the specific performance of that part of the agreement; yet if he has also contracted that he will not carry on the same trade with other persons, the court will restrain him from breaking that part of his agreement." See also *Printing & Registering Co.* v. *Sampson*, L. R., 19 Eq., 462; *Diamond Match Co.* v. *Roeber*, 106 N. York, 473, 482, 483; *Hodge* v. *Sloan*, 107 id., 244.

*C. R. Ingersoll* and *F. L. Hungerford*, for the appellee.

ANDREWS, C. J. Contracts for personal service are matters for courts of law, and equity will not undertake a spe-

cific performance. 2 Kent's Com., 258, note *b; Hamblin* v. *Dinneford,* 2 Edw. Ch., 529; *Sanquirico* v. *Benedetti,* 1 Barbour, 315; *Haight* v. *Badgeley,* 15 id., 499; *DeRivafinoli* v. *Corsetti,* 4 Paige, 264. A specific performance in such cases is said to be impossible because obedience to the decree cannot be compelled by the ordinary processes of the court. Contracts for personal acts have been regarded as the most familiar illustrations of this doctrine, since the court cannot in any direct manner compel the party to render the service.

The courts in this country and in England formerly held that they could not *negatively* enforce the specific performance of such contracts by means of an injunction restraining their violation. 3 Wait's Actions & Defences, 754; *Marble Company* v. *Ripley,* 10 Wallace, 340; *Burton* v. *Marshall,* 4 Gill, (Md.,) 487; *De Pol* v. *Sohlke,* 7 Robertson, (N. Y.,) 280; *Kemble* v. *Kean,* 6 Simons, 333; *Baldwin* v. *Society for Diffusion of Knowledge,* 9 id., 393; *Fothergill* v. *Rowland,* L. R., 17 Eq., 132.

The courts in both countries have, however, receded somewhat from the latter conclusion, and it is now held that where a contract stipulates for special, unique or extraordinary personal services or acts, or where the services to be rendered are purely intellectual, or are peculiar and individual in their character, the court will grant an injunction in aid of a specific performance. But where the services are material or mechanical, or are not peculiar or individual, the party will be left to his action for damages. The reason seems to be that services of the former class are of such a nature as to preclude the possibility of giving the injured party adequate compensation in damages, while the loss of services of the latter class can be adequately compensated by an action for damages. 2 Story's Eq. Jur., § 958 *a;* 3 Wait's Actions & Defenses, 754; Pomeroy's Eq., § 1343; *California Bank* v. *Fresno Canal Co.,* 53 Cal., 201; *Singer Sewing Machine Co.* v. *Union Button Hole Co.,* 1 Holmes, 253; *Lumley* v. *Wagner,* 1 De G. M. & G., 604; *South Wales R. R. Co.* v. *Wythes,* 5 id., 880; *Montague* v. *Flockton,* L. R., 16 Eq., 189.

The contract between the defendant and the plaintiffs is made a part of the complaint. The services which the defendant was to perform for the plaintiffs are not specified therein, otherwise than that they were to be such as should be devolved upon him by the general manager; "it being understood that such duties may include traveling for said companies whenever in the judgment of said general agent the interests of the business will be thereby promoted;" and also "including such duties as traveling for said companies as said general agent may devolve upon him, including also any duties as secretary or other officer of either or both of said companies as said companies may desire to have him perform." These services, while they may not be material and mechanical, are certainly not purely intellectual, nor are they special, or unique, or extraordinary; nor are they so peculiar or individual that they could not be performed by any person of ordinary intelligence and fair learning. If this was all there was in the contract it would be almost too plain for argument that the plaintiffs should not have an injunction.

The plaintiffs however insist that the negative part of the contract, by which the defendant stipulated and agreed that he would not be engaged in or allow his name to be employed in any manner in any other hardware, cutlery, flatware or hollow-ware business, either as a manufacturer or seller, fully entitles them to an injunction against its violation. They aver in the complaint, on information and belief, that the defendant is planning with certain of their competitors to engage with them in business, with the intent and purpose of allowing his name to be used or employed in connection with such business as a stamp on the ware manufactured; and they say such use would do them great and irreparable injury. If the plaintiffs owned the name of the defendant as a trade-mark they could have no difficulty in protecting their ownership. But they make no such claim; and all arguments or analogies drawn from the law of trade-marks may be laid wholly out of the case.

There is no averment in the complaint that the plaintiffs

are entitled to use, or that in fact they do use, the name of the defendant as a stamp on the goods of their own manufacture ; nor any averment that such use, if it exists, is of any value to them. So far as the court is informed the defendant's name on such goods as the plaintiffs manufacture is of no more value than the names of Smith or Stiles or John Doe. There is nothing from which the court can see that the use of the defendant's name by the plaintiffs is of any value to them, or that its use as a stamp by their competitors would do them any injury other than such as might grow out of a lawful business rivalry. If by reason of extraneous facts the name of the defendant does have some special and peculiar value as a stamp on their goods, or its use as a stamp on goods manufactured by their rivals would do them some special injury, such facts ought to have been set out, so that the court might pass upon them. In the absence of any allegation of such facts we must assume that none exist.

The plaintiffs also aver that the defendant intends to make known to their rivals the knowledge of their business, of their customers, etc., which he has obtained while in their employ. But here they have not shown facts which bring the case within any rule that would require an employee to be enjoined from disclosing business secrets which he has learned in the course of his employment and which he has contracted not to divulge. *Peabody* v. *Norfolk*, 98 Mass., 452.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.