*(Circuit Court of Cook County. In Chancery.)*

## Sigmund Oppenheimer, et al.

### vs.

## George Jacob Sayer.

(July 18, 1890.)

1. CONTRACTS—RESTRAINT OF TRADE. Covenants in restraint of trade generally are void, because contrary to public policy, but where the restraint is only partial, and the restriction is reasonable, such contracts are legal and will be enforced.

2. SAME—CONTRACTS EMBRACING ENTIRE STATE. The doctrine of the common law that contracts which embrace the entire kingdom or state are void, has been modified by the later decisions.

3. CONSIDERATION—ADEQUACY OF. At law a consideration of even one dollar is sufficient to support a contract. The court cannot inquire into its adequacy.

4. SAME—COURTS OF EQUITY. A contract good at law is good in equity. A court of equity will inquire into the adequacy of the consideration only when the contract is sought to be specifically enforced, and the inquiry of the court then is, whether a court of equity will lend its aid to enforce the contract.

5. EMPLOYMENT CONTRACT—REASONABLENESS OF COVENANT. An agreement by an employe not to engage in a particular business for three years after the termination of his employment is not unreasonable.

6. SAME—RULES APPLICABLE. On an application for an injunction to restrain an employe from violating a contract not to engage in a particular business for three years after the termination of his employment, the decisions governing courts of equity as to decreeing specific performance of contracts should control.

7. SPECIFIC PERFORMANCE—WHEN NOT GRANTED. If there are any circumstances which render the enforcement of a contract unfair, harsh, oppressive or inequitable, specific performance will not be granted.

8. SAME. Where an inexperienced employe was induced to sign a contract upon the representations that a fellow employe had signed a similar contract, which statement was false, and where the contract is unfair in that the complainants do not bind themselves to give employment to the defendant except from week to week, and do not bind themselves to teach him the business, or the secrets of such business, the court will not restrain a breach of such contract by injunction. In order to

have such contracts enforced they must not be unilateral or one sided. They must be fair and not harsh or oppressive.

9. SAME—COVENANTS NOT TO ENGAGE IN BUSINESS. The fact that all other business pursuits are open to an employe who has agreed not to engage in a particular business does not affect the reasonableness of the covenant. This is a good answer at. law, but it is an unconscionable one in equity.

Bill for injunction to restrain an employe from breaking his contract not to engage in business. Bill filed January 19, 1889. Heard before Judge Murray F. Tuley. Case No.. 70,972.

Statement of facts.

The bill alleged that the complainants were a partnership doing business in Chicago and New York; that they were engaged in the business of manufacturing and selling sausage casings and supplies of various kinds and descriptions, commonly used by butchers and others engaged in the business of buying, selling and manufacturing meats and meat products; that needing the services of salesmen to carry on their business they employed the defendant at his request, to act as salesman in their business at a stipulated salary, such hiring to continue as long as it was mutually satisfactory to the parties thereto, and that complainants agreed to instruct him in the said business and impart to him the names of their customers and other trade secrets. That they entered into a written contract with said defendant as follows:

"This agreement, made this eighth day of March, 1884, at Chicago, Illinois, by and between S. Oppenheimer and Company, a firm doing business in the City of Chicago, Cook County, Illinois, also in the City of New York, State and County of New York, parties of the first part, and George Jacob Sayer, party of the second part, Witnesseth:

"Whereas, The parties of the first part are engaged in the business of manufacturing and dealing in sausage casings and butchers' supplies in which said business are certain trade secrets of great importance to the parties of the first part.

"And whereas, said parties of the first part have employed in said business, said party of the second part and while so

employed may instruct him in said business, and impart to him such trade secrets,

"Now, in consideration of said employment and of one dollar to him in hand paid, the receipt whereof is hereby acknowledged, and of various other good and valuable considerations to him thereunto moving said party of the second part covenants and agrees to and with said parties of the first part and their legal representatives that he will never disclose or make known directly or indirectly to any person or persons any information or trade secrets concerning or in any wise relating to the business of the said parties of the first part and so acquired or learned by him as said employe or agent.

"Said party of the second part further covenants and agrees that within the following named countries, to-wit: the States of Connecticut, Georgia, Louisiana, Maryland, Massachusetts, New Jersey, New York, Pennsylvania, Rhode Island, South Carolina, Illinois, Indiana, Michigan, Ohio, Wisconsin, Iowa, Minnesota, Tennessee, and the Province of Ontario in the Dominion of Canada, said party of the second part will not for himself nor for any other person or persons, directly or indirectly, engage in the business now carried on by said parties of the first part for the period of three years from the date of the termination of said employment.

"(Signed)      Geo. J. Sayer."

That at the time said contract was entered into the said defendant was a minor but upon the discovery of that fact by the complainant the said defendant signed a confirmatory agreement upon the attaining of his majority.

That in December, 1888, the said defendant left his employment of his own free will, and such hiring thereupon terminated; that thereupon said defendant entered into a partnership with one Nicholas Wolf in the city of Chicago for the purpose of selling and dealing in sausage casings and butchers' supplies, and thereafter did engage in such business in violation of his agreement, and attempted to deal with the customers of complainants in the states of Illinois and Wisconsin.

That while in the employ of complainants said defendant

traveled as salesman in the states of Illinois, Michigan, Minnesota and other states, and complainants believe that defendant will attempt to engage in business in said states and sell to the customers of complainants, and that said defendant has acquired a knowledge of the customers of complainants which information he could not have acquired except in the employ of complainants, and that such knowledge constitutes trade secrets in the business of complainants.

That the damages which complainants will suffer by reason of defendant's breach of his contract are difficult and almost impossible of ascertainment, and complainants will suffer irreparable injury; that defendant has no property and is not worth more than $2,000.00.

The prayer of the bill was that the defendant be restrained "from engaging either on his own account, or as salesman or clerk or other agent for another, or in any way, directly or indirectly in the business of buying and selling sausage casings or butchers' supplies in the states of Illinois, Wisconsin, Michigan, Ohio, Missouri, and Minnesota or either of them, or with any firm or corporation doing business or to do business in the same line of trade, business or manufacture in the said states or any of them until the 24th day of September, 1891."

A preliminary writ was issued in accordance with prayer of the bill. The defendant answered, proofs were taken and the case was heard on final hearing. The defenses interposed were that, first, that the contract was procured by fraud, and second, that it was contrary to public policy and therefore void.

The answer which was sworn to set up the following: "This defendant says that he was born on the 23rd of April, 1864; that at the time of the signing of said contract, he was a minor, but the fact of the minority was not spoken of at the time of the signing of said contract.

"This defendant further answering, says that on or about the 10th day of April, 1886, after having been in the employment of said firm continuously, he signed a certain document, called in said bill a confirmatory and supplemental contract,

but whether said contract is in the words and figures as stated in said bill of complaint, this defendant is not advised, except as stated therein, because this defendant was not furnished with any copy of said contract.

"This defendant avers that the circumstances surrounding the execution of said supplementary contract are as follows: Said Oscar Aberle accidentally became aware of the fact, through conversation between this defendant and said Aberle, that this defendant was a minor at the time when he signed the first document set forth in said bill of complaint. He thereupon immediately insisted to this defendant that it was necessary that this defendant sign another contract with said firm, by reason of said minority, to which proposition this defendant objected, and he was thereupon informed by said Aberle that such was the rule of the house, and that this defendant must sign the contract, and he gave this defendant to understand, and defendant so believed from such conversation, that unless he would sign such contract he would lose his position as an employe of said firm. This defendant was then ready to go out on the road and attend to his usual business, but by reason of the refusal of this defendant to sign said contract, he was kept around the office of said firm, doing nothing, and during said time he was constantly being persuaded by said Freund and said Aberle to sign said contract. This defendant, during said conversation was informed by said Aberle that all other employes in the firm had signed such contracts, whereupon this defendant asked said Aberle and Freund whether one Nicholas Wolf, who was then and always had been a friend of said defendant, and upon whose advice and judgment this defendant was in the habit of relying, had signed a like contract, to which question said Aberle and Freund replied that he had. Said Nicholas Wolf was then absent from the city of Chicago and could not be consulted by this defendant as to the advisability of signing such contract, and this defendant did not consult any one experienced in such matters, whether to sign such a contract, and this defendant in order to continue in said employment, and implicitly relying on the facts stated to him that other em-

ployes of said firm, and particularly said Nicholas Wolf had signed a like contract, this defendant was induced by said Aberle and Freund to sign said contract, but he was then informed by said Aberle at the time of said signing, and before he consented finally to sign the same, that it was only a matter of form, that it would amount to nothing, inasmuch as said firm could not stop this defendant from going elsewhere, and he then referred to the fact that one John B. Rucker, formerly a traveling salesman of said firm, was then with an opposition firm in spite of a like contract signed by said Rucker with said firm. In view of these explanations and representations, and relying upon them, this defendant signed said contract and continued in the employ of said firm till the last few weeks of December, 1888, when said employment was terminated.

"This defendant further answering says that at the time of the signing of said second contract, the first contract was not read by this defendant, nor was it read to him by said complainants, or by any of them, nor did this defendant have in mind the particular provisions of said first contract signed by him in 1884, and this defendant while at that time inexperienced in business affairs, had his anxiety quieted by said complainants by the statement that said signing was a mere matter of form and amounted to nothing anyhow, and that such impression was upon the mind of this defendant when he went into partnership with said Nicholas Wolf, as hereinafter more fully stated."

The allegations of the answer on the subject of public policy were as follows:

"This defendant further says that the business of buying and selling butchers' supplies and sausage casings is not controlled by said firm of S. Oppenheimer & Co., but is an extensive business participated in by over ten firms in the city of Chicago, controlling the same territory which is controlled by said S. Oppenheimer & Co.; that a large number of persons are in the business of selling butchers' supplies and sausage casings, such as the various packers of the city of Chicago, located at the stock yards, in the town of Lake; that

there is a large competition in said trade at the present time, and has been for several years past, and said competition is increasing by the location of various houses engaged in the same line in various western cities, and when this defendant engaged in said business in copartnership with said Nicholas Wolf, he was willing to take his chances in said competition with new and old houses and do the best he could under all circumstances for the purpose of supporting his family.

"This defendant further answering says that he has no other business except the business herein described, out of which he could make a pleasant living, and that he is in danger of losing his livelihood, and perhaps the benefit of his partnership agreement with said Nicholas Wolf, if said temporary injunction be continued.

"This defendant further insists that there was no consideration for such contracts, or either of them; that even if there was such a consideration, said consideration was inadequate, inequitable, and illegal, and therefore void in law and equity.

"This defendant further says, that during his entire employment with said firm he was at no time engaged in the manufacture of sausage casings; that at the beginning he was engaged principally in the sale of sausage casings; that thereafter, in addition, at the request of said firm, he sold butchers' supplies, which latter term comprises butchers' tools, fixtures, engines and boilers, water motors, refrigerators, tanking outfits, safes and everything which may be used in slaughter-houses and butcher shops; that such butchers' supplies, in more or less quantity, are also kept in every hardware store in this country, and are commodities handled in other branches of business; that sausage casings are also handled in large quantities for the purpose of sale, by packing establishments engaged in the killing of domestic animals.

"* * * That this defendant insists that the provisions of said agreement, set forth in said bill of complaint, are too indefinite and too broad, even if otherwise legal, to receive the countenance of a court of equity; and this defendant insists that it is his right to be relieved from said inequitable

and illegal contract, and that he be relieved from the injunction issued by this honorable court. * * * "

*Prussing & Hutchins,* solicitors for complainant.

*Moses & Pam,* solicitors for defendant.

TULEY, J.—

The complainants, doing business in New York and Chicago, selling sausage casings, butchers' supplies, meat and meat products, in 1884 employed the defendant, then about twenty years of age, as a traveling salesman, at a salary of seven dollars per week and one per cent. upon all sales made by him; and a few days after procured from the defendant a written agreement, in substance, that in consideration of such employment and of one dollar and other good and sufficient considerations, not to make known any information or trade secrets relative to the business of complainants, and that neither in Illinois and eighteen other named states, nor in the province of Ontario, Canada, would he, directly or indirectly, engage in the said business for the period of three years from the termination of his employment.

In 1886, complainants having discovered that the defendant was a minor when he signed the agreement, obtained a new agreement or contract confirming that made in 1884.

In December, 1888, defendant left the employment of complainants and soon thereafter entered into a partnership with one Wolf in the city of Chicago and commenced the business of dealing in sausage casings and butchers' supplies.

Thereupon, on the 19th of January, 1889, this bill was filed to restrain the defendant from carrying on such business in Illinois, Wisconsin, Michigan, Ohio and Minnesota, being the states in which defendant had done business as a traveling salesman for complainants.

It appears to be admitted that the first contract is not binding on defendant by reason of his being a minor at the time of its execution, unless the confirmatory agreement is binding upon him.

Defendant alleges fraud of complainant in obtaining the execution of the confirmatory agreement of 1886.

Much evidence was taken which is conflicting and irreconcilable. While there is some evidence tending to show misrepresentations made to defendant to induce him to sign the agreement, there was none which in my opinion was of so material a character, or which was so controlling in inducing defendant to sign the confirmatory agreement as to make the contract void for fraud. It is contended that the evidence shows that at least one hundred and one dollars was paid defendant as an additional consideration for his signing the last agreement.

I find from the evidence that the defei..lant signed the same under a threat of discharge and received no consideration other than a continuation of his weekly employment and probably the one dollar mentioned in the agreement.

The defendant contends that the contract is in restraint of trade and therefore contrary to public policy and void. Covenants in restraint of trade generally are void because contrary to public policy, but where the restraint is only partial, the consideration for the agreement is a good consideration, and the restriction is reasonable, such contracts are legal and can be enforced.

The doctrine of the common law that contracts in restraint of trade which embrace the entire kingdom or state are void, has been much modified by the later decisions of the courts.

Justice Bradley in *Oregon Steam Navigation Company v. Winsor,* 20 Wallace, 64, 67, well claims that "This country is substantially one country, especially in all matters of trade and business, and it is manifest that cases may arise in which it would involve too narrow a view of the subject to condemn as invalid a contract not to carry on a particular business within a particular state," and that "Cases must be judged according to their circumstances, and can only be rightly judged when the reason and grounds of the rule are carefully considered."

In the modern method of doing business, by means of traveling salesmen, a business ceases to be local or confined to any one state, but the whole territory traversed by the traveling salesman becomes the territorial limits of the busi-

ness.  A covenant not to do business within such limits may not be any more against public policy than, formerly, a covenant not to do business in a certain town or city.

The methods of modern convenience in the transaction of business have done away with the reason of the rule founded upon territorial limitations.

In the *Diamond Match Case,* 106 N. Y. 473, the covenant included all the United States except one.  It was held valid.  *Beal v. Chase,* 31 Mich. 491, is also a very strong case upon this point.

It is contended that the consideration, which was only an agreement to employ the defendant by the week at certain wages and the one dollar mentioned in the contract, was inadequate and therefore the contract is void.

At law the consideration—even that of one dollar—is a valuable consideration and sufficient to support a contract— sufficient to support this as well as any other contract.  If the parties considered the employment and the one dollar a reasonable and adequate consideration, it is not for the court to say that it was unreasonable or inadequate.  To hold otherwise it appears to me would be to make the contract rest upon the business capacity and intelligence of the court as compared with that of the complaining party.  It is an old saying that the law does not attempt to give any man brains or business sense.

A contract good at law should be good in equity.  The only time a court of equity will inquire into the adequacy or sufficiency of the consideration is when the contract is sought to be specifically enforced, directly or indirectly, and the inquiry of the court then is not as to the validity of the contract, but whether the court of equity will lend its aid to enforce it.

The restriction as to the length of time (three years) for which defendant bound himself not to engage in the business, is not unreasonable.  I do not understand defendant's counsel as contending that it is.

The only remaining question is, should a court of equity give its aid towards the enforcement of this contract?  It

appears to me that the decisions governing courts of equity as to decreeing the specific performance of contracts should control this case. The application of complainant to this court is that this court decree that the defendant specifically perform his contract by decreeing a perpetual injunction against his breaking it. In other words,—that he abstain from going into and doing the business which by the contract he agreed he would abstain from for three years. It is the only specific performance of the contract by the defendant which this court could decree.

There are no trade secrets in this business to be divulged, and it is only by the competition of the defendant in business that complainants can be injured.

Pomeroy, in his work on the Specific Performance of Contracts says:

"It may be laid down as a general proposition that if there is any circumstance or fact connected with the preliminary negotiation * * * with the relations of the parties or conduct of the plaintiff which renders the enforcement unfair, harsh or inequitable upon the defendant, such specific performance will be refused; and to produce such a result there need have been no intentional dishonesty or unfairness, although in a great majority of instances the design to over-reach or obtain an undue advantage exists." * * *

"The concealment, suppression or neglect to disclose any fact during the negotiation which, if known, could have reasonably affected the result, although not amounting to such fraudulent concealment as would furnish ground for a rescission, will induce the court to withhold its equitable remedy." (Pomeroy, secs. 183, 184.)

In this case I found that in order to induce defendant to sign the contract, one of the complainants did represent to him that Nic Wolf, a fellow-employee, a friend of defendant and upon whom he was known to rely for counsel and advice, had signed a similar contract. This was false, and while not such a misrepresentation as would be material and enable the defendant to have a rescission of the contract, this court,

which abhors deceit and false representations, whether material or not, can not look favorably upon an application for the enforcement of a contract obtained by such means.

"Not only," says Pomeroy, "must the agreement be fair and reasonable in its terms and its surrounding circumstances; it is a well settled doctrine that its specific execution must not be oppressive."

That—"every unfair contract is unconscionable and hard."

"The oppression and hardship, therefore, which fall within the scope of the doctrine may result from the unequal, unconscionable provisions of the contract itself."

In this case the defendant, a boy of twenty, uneducated and ignorant to an extent that he could with difficulty read writing, applied for work to complainants, who employed him by the week at $7 per week, and one per cent. commission upon sales. He is asked to sign this contract,, and without reading it, does so, or if he did read it, was scarcely capable of comprehending its meaning. Under this contract complainants do not bind themselves to give him employment beyond week to week, do not bind themselves to teach him the business or the secrets, if any, of such business, but exact from him a mortgage upon his liberty of action and practically upon his means of livelihood, for three years. If he should continue in the employment long enough to learn the business, he is made to agree in effect that for an employment for one week he will not pursue a certain line of business for a term of three years after his discharge. It is true he affirmed this contract two years or more thereafter, when of full age, but he did it under a threat of discharge and upon a false representation that his friend, upon whose judgment he relied, had signed a similar one. The consideration for the confirmatory agreement was the continuation of the same weekly employment, and one additional dollar. Is it fair, is it a reasonable contract as between men of large business and contract experience, educated and intelligent men, and a boy of twenty or twenty-two, ignorant, uneducated, seeking wages upon which to live? Is it fair that such men should exact

from such employe a covenant by which he surrenders for three years his "business freedom" as to following the business which may have required years to learn?

It is said, however, that all other business pursuits and trades were open to him. That is a good answer at law, but is an unconscionable one in equity.

I do not want it to be understood that no contracts of this nature will be enforced in equity. But in order to have them enforced it must appear that they are not practically unilateral, or all on one side. The employer must agree to do something, must give an adequate consideration; the contract must be fair, not harsh or oppressive, in order to obtain an injunction which will restrain a party's business freedom and which will operate more or less in restraint of trade.

It is alleged that the defendant is insolvent, and that in a suit at law the damages are not capable of ascertainment. The circumstances may give a court of equity jurisdiction to enforce contracts of this nature which are fair and reasonable, not one sided in their covenants, obtained in a fair, not oppressive manner, and not founded upon deceit or misrepresentations. But this is not such a contract, and the fact that the remedy is not adequate does not make it the duty of this court to enforce contracts which do not possess these qualifications, and the enforcement of which would be against equity and good conscience.

The complainants must seek their remedy at law, and the injunction herein granted must be dissolved and the bill dismissed for want of equity without prejudice to the complainant's legal remedy.

Defendant moved the court for leave to file suggestion of damages.

NOTE.

*A.*

INJUNCTION TO PREVENT BREACH OF CONTRACT FOR PERSONAL SERVICES AND TO RESTRAIN EMPLOYES FROM SOLICITING CUSTOMERS, DISCLOSING TRADE SECRETS, ETC. VALIDITY OF CONTRACTS, ETC.

Injunction will not lie to restrain an employe from working for

a rival concern in violation of his contract unless his services are unique and extraordinary. *Kessler v. Chappelle*, 77 N. Y. S. 285 (wine salesman); *Stone Cleaning & Pointing Union v. Russell*, 77 N. Y. S. 1049 (stone cleaning and pointing workman); *Jewelry Co. v. O'Brien*, 70 Mo. App. 432 (jewelry salesman); *Lithographic Co. v. Crane*, 12 N. Y. S. 834 (skilled lithographer); *Johnston Co. v. Hunt*, 21 N. Y. S. 314, 66 Hun, 504 (advertising solicitor). *Rogers v. Rogers*, 58 Conn. 356, 20 Atl. 467, 18 Am. St. Rep. 278 (cutlery salesman, agent and manager); *Burnley v. Ryle*, 91 Ga. 701, 17 S. E. 986 (insurance solicitor). See also vol. 4 Pomeroy, Equity Jurisp., 3rd ed., sec. 1343; Pomeroy, Specific Performance, 2nd ed., sec. 24.

In *Universal Talking-Machine Co. v. English*, 69 N. Y. S. 813, 34 Misc. 342, it was held that equity would not enjoin an employe having special knowledge or skill, unless it was affirmatively shown that such skill cannot be supplied by others.

Injunction will lie where the services are unique and extraordinary. *Lumley v. Wagner*, 1 DeGex, MacN. & Gordon, 604 (singer); *Hoyt v. Fuller*, 19 N. Y. S. 962 (danseuse); *Duff v. Russell*, 14 N. Y. S. 134, 16 N. Y. S. 958, 133 N. Y. 678, 31 N. E. 1 (actress); *Daly v. Smith*, 38 N. Y. Super. Ct. 158, 49 How. Pr. 150 (actress). This decision contains a full review of the authorities. *McCaull v. Braham*, 16 Fed. 37 (actress). See note to above case on pp. 42–49. *Metropolitan Exhibition Co. v. Ward*, 9 N. Y. S. 779 (ball-player); *Pratt v. Montegriffo*, 10 N. Y. S. 903 (singer); *Carter v. Ferguson*, 58 Hun, 569, 12 N. Y. S. 580 (actor); *Canary v. Russell*, 30 N. Y. S. 122, 9 Misc. 558 (actress); *Fredricks v. Mayer*, 13 How. Pr. 566 (actor); *Philadelphia Ball Club v. Hallman*, 47 Leg. Int. 130, 8 Pa. Co. Ct. 57 (ball-player); *American Association Ball Club of Kansas City v. Pickett*, 8 Pa. Co. Ct. 232 (ball-player); *Montague v. Flockton*, L. R. 16 Eq. 189 (actor); *Cort v. Lassard*, 18 Ore. 221, 22 Pac. 1054, 17 Am. St. Rep. 1054, 6 L. R. A. 653 (acrobat); *Metropolitan Exh. Co. v. Ewing*, 42 Fed. 198, 7 L. R. A. 381 (ball-player); *Philadelphia Ball Club Limited v. Lajoie*, 202 Pa. 210, 51 Atl. 973, 90 Am. St. Rep. 627, 54 Cent. L. J. 446, 58 L. R. A. 227 (ball-player); *Grimston v. Cunningham*, L. R. (1894) 1 Q. B. D. 125 (actor).

In the cases of *The Columbus Baseball Club v. Reiley*, 25 Week. L. B. 385, s. c. 11 Ohio Dec. 272; *American Baseball & Athletic Exhibition Co. v. Harper*, 54 Cent. L. J. 449, and *Harrisburg Baseball Club v. Athletic Association*, 8 Pa. Co. Ct. 337, injunctions were denied in the case of baseball-players on the ground that the services were not unique and extraordinary. See also *H. W. Gossard Co. v. Crosby*, 109 N. W. 483 (Iowa).

In *Philadelphia Ball Club Limited v. Lajoie, supra*, it was held that to authorize an injunction, it is not necessary that the employe's services be of such a character that it is impossible to replace them; it is sufficient if they are of such a unique character,

and display such a special knowledge, skill and ability as to render them of peculiar value to the employer and difficult of substitution.

In *H. W. Gossard Co. v. Crosby* (Iowa, Oct. 1906), 109 N. W. 483, the authorities are reviewed at length and it is held that in the absence of an express covenant not to work for another in a contract for personal services, equity will not aid the enforcement of such contract by restraining the employe from working for others. It is also held that even where there is an *express* covenant not to work for others, injunction will not be granted, except where the services are special, unique, unusual and extraordinary, or of an intellectual character which render such services of peculiar value. In that case the defendant was employed to sell a front lace corset and to give lectures pertaining to physical culture. The services were alleged to be unique, requiring a cultured salswoman of strong individuality, with good address and ability as a lecturer, which requirements the employe was alleged to possess. It was held that such services were not unique and extraordinary.

In *Brooklyn Base Ball Club v. McGuire*, 116 Fed. 782 (C. C. E. D. of Pa.), an injunction was denied in the case of a ball-player, for the reason that the contract contained a provision that the same might be terminated upon ten days' notice.

In *Welty v. Jacobs*, 171 Ill. 624, it was held that the manager of a theatrical company could not enjoin the proprietor of a theater from refusing to furnish his theater, stage hands, etc., nor from letting the theater to another company, as such a contract cannot be affirmatively specifically enforced.

In *Robertson v. Montgomery Baseball Ass'n*, 141 Ala. 348, 37 So. 388, it was held that a bill would not lie to restrain defendants from seeking an injunction to restrain complainants from playing baseball. See vol. 60 Cent. L. J. 93.

See also upon the subject in general note in vol. 90 Am. St. Rep. 646 and in vol. 54 Cent. L. J. 451.

As to whether an injunction will lie in the absence of an express covenant see *H. W. Gossard v. Crosby* (Iowa 1906), 109 N. W. 483, where the authorities are reviewed. See also *Butler v. Galletti*, 21 How. Pr. 465; *Welty v. Jacobs*, 171 Ill. 624; *Whitwood Chemical Co. v. Hardman*, L. R. (1891) 2 Ch. Div. 416.

In *Hahn v. Concordia Society*, 42 Md. 460, an injunction was denied where the employment contract provided for stipulated damages in case of a breach by the employe.

## B.

SOLICITATION OF CUSTOMERS AND DISCLOSURE OF TRADE SECRETS. In *Cahill v. Madison*, 94 Ill. App. 216, it was held that equity would interfere by injunction to restrain an employe from attempt-

ing to take away or solicit the customers of his employer in violation of his contract.

In *Hoops Tea Co. v. Dorsey*, 99 Ill. App. 181, it was held that injunction would lie to restrain a solicitor and salesman from soliciting the customers of his employer in violation of his contract.

But in *India Tea Co. v. Peterson*, 108 Ill. App. 16, it was held, in a similar case, that an injunction would not be granted where the contract was otherwise unfair and unconscionable, or harsh and oppressive.

· In *Thum v. Tioczynski*, 114 Mich. 149, 72 N. W. 140, it was held that one who is given employment by a manufacturer whose processes of manufacture, methods, and machinery, are kept secret from the public, upon the agreement that he will not use the information imparted to him, in the course of his employment, for his own benefit, or communicate it to strangers, will be enjoined from breaking his agreement. The case contains a thorough review of the decisions.

And in *Salomon v. Hertz*, 40 N. J. Eq. 400, it was held that an injunction would lie to restrain an employe from divulging certain processes of manufacture, in violation of his agreement with his employer. The injunction was denied in so far as it was sought to prevent the employe from making known where or from whom the employer buys his materials, or to whom he sells his goods, or the prices at which he buys or sells, in violation of his agreement. Such an agreement will be construed as limited to the term of service.

In *Harrison v. Glucose Co.*, 116 Fed. 304 (C. C. A., 7th Cir.), it was held that an employe would be restrained from violating a covenant not to divulge trade secrets, etc. A large number of decisions are referred to in the decision of the court.

### C.

VALIDITY OF CONTRACTS NOT TO ENTER INTO SIMILAR EMPLOYMENT.

The rule (Point A, *supra*) that injunction will not lie to restrain an employe from working for a rival concern, unless his services are unique and extraordinary, apparently has no application, where the employe covenants that he will not engage in a similar business or in the service of a competitor for a reasonable period of time *after* the termination of his employment. Such a covenant is valid and will be enforced.

In *Carter v. Alling*, 43 Fed. 208 (C. C. N. D. of Ill.), it was held that a contract between a manufacturing corporation, whose business extends throughout the United States and Canada, and one of its traveling salesmen, who had been in its employ for several years, whereby he agrees not to enter the service of any business competitor of the corporation, for three years, after leaving its service, is valid, and an injunction was awarded. A large number of cases, both American and English, are reviewed.

But in *Ehrman v. Bartholomew*, L. R. (1898) 1 Ch. Div. 671, a traveler for the plaintiffs, a firm of wine merchants, agreed to devote the whole of his attention and time to the business of the plaintiffs, and not directly or indirectly to engage or employ himself in any other business with any other person than the plaintiffs for a term of ten years. The traveler having left the plaintiffs' employ and entered that of another firm, the plaintiffs moved for an injunction to restrain him from engaging *in any other business*, and from acting as a traveler for any other firm of wine merchants, during the term of ten years. *Held*, that the negative stipulations in the contract were unreasonable and ought not to be enforced, and that the application must therefore be refused.

It was held also that the plaintiffs might enforce those provisions of the contracts relating to the solicitation of plaintiffs' customers, or the supplying of such customers with goods, etc., and that in this respect the contract was severable.

And in *Sternberg v. O'Brien*, 48 N. J. Eq. 370, 22 Atl. 348, it is held that an agreement not to enter a particular employment is valid where the contract is restricted to a particular business, but otherwise it is bad. And where it is not alleged that the defendant occupied a position of special confidence, or acquired knowledge of the complainant's business secrets and methods, which he may use so as to benefit a rival, and where the length of time the defendant remained in the complainant's employ is so short that he could not have acquired the slightest influence over the complainant's customers, the injunction will be denied.

It was also held that where an employe agrees that he will not enter the employ of any rival of his employer "in any capacity," this will be construed to mean in any capacity in the particular business carried on by the employer.

And in *Harrison v. Glucose Co.*, 116 Fed. 304 (C. C. A., 7th Cir.), it was held that a covenant by an employe not to engage in the same business during the term of his employment, within a radius of 1,500 miles from the city of Chicago, was not in restraint of trade, and would be enforced by injunction.

But in *Harding v. Glucose Co.*, 182 Ill. 551, a similar contract between vendor and vendee was declared void.

In *Underwood v. Barker*, 1 Ch. Div. (1899) 300, it was held that a contract in which the defendant entered into a covenant that he would not, for the space of one year after leaving his employment, carry on the same business as his employer, or enter into the service of any person, in the same line of business, in either the United Kingdom, France, Belgium, Holland, or in the Dominion of Canada, was a valid and enforceable contract, and not in restraint of trade, and that the breach of such contract would be restrained by injunction.