(18 Misc. Rep. 118.)

WALCUTT et al. v. GASKINS.

(Supreme Court, Special Term, New York County. September, 1896.)

INJUNCTION BY DEFAULT—WHEN VACATED.
    An injunction granted on default will be set aside where defendant shows as a defense that the contract which was the basis of the suit was practically unilateral, and that, not understanding the meaning of the papers served on him in the suit, he did not take them.

Action by Cleveland Walcutt and others against George J. Gaskins. Defendant moves to vacate injunction. Granted.

Louis Hicks, for plaintiffs.
Thomas F. Donnelly, for defendant.

RUSSELL, J. We have grave authority for the rule that "the bird that can sing, and will not sing, must be made to sing. Old adage." Chancellor Walworth, in De Rivafinoli v. Corsetti, 4 Paige, 270. But the learned chancellor duly appreciated the difficulty of finding any officer of the court of chancery with that exquisite sensibility necessary to understand and enjoy with proper zest the peculiar beauties of Italian opera, so that the singing of the defendant, under the direction and in the presence of the master in chancery, might afford a satisfactory test as to whether the engagement was duly performed, according to its spirit and intent. The lapse of 60 years has not so improved the courts of the state of New York in this respect that the substantial difficulty suggested by the chancellor has yet been obviated. It is not a matter of judicial knowledge to this court that any member of the bar might be appointed referee, or even any justice of this court could be chosen, who could well perform such a task. It may be that, after a judicial consultation, some officer or judge might be designated who could tell the difference between "Casta Diva" and "The Star Spangled Banner," or distinguish "Home, Sweet Home" from "Yankee Doodle." But the repertoire of the defendant, as I judge from the scope of the allegations of the plaintiffs' papers, is far wider in its range than the instances cited; and, if the plaintiffs should direct the defendant to sing an air from Lohengrin, or possibly a sacred hymn, the difficulty of choosing an expert judicial officer to test the performance might be insurmountable.

Therefore, either by appreciation by the plaintiffs of the obstacles in the way of affirmative performance of the contract, or by careful discrimination of the learned justice who allowed the judgment in this action, the judgment is confined to an injunction against the defendant from singing, and, however much critics may refine upon what is or what is not singing, it is fairly a matter of lawful presumption that it may be determined by auricular evidence whether or not an attempt .is actually made to violate such injunction.

But the defendant pleads that he ought to be relieved from even this inhibition, and that, if not from motives of public policy, at least as a means of supporting himself and those dependent upon him, the melodies of his voice should not be stilled in perpetuam. He claims that, when the summons and complaint and notice of motion for an injunction were served upon him, he did not understand the meaning of the papers, and did not take them. On the difference, however, between the parties, as to the lawfulness of the service of these papers, I must find with the plaintiffs, that they present sufficient proof, although some of the affidavits they use in opposition have not been verified. The defendant, however, may not, in view of the apparent experiences of his life, have understood the meaning and effect of the papers, and thus have suffered a default, the effect of which he now, as we may infer, in silence, appreciates. He alleges, also, by way of defense, that the contract itself is grossly inequitable, and practically unilateral, and that his share of the burden is not in harmony with the programme. A reference to that contract shows that, while he agrees to sing for the plaintiffs for a pecuniary consideration, stated in dollars and cents, the contract provides only for those occasional singings, called for by the plaintiffs, of songs selected by them, and nowhere binds the plaintiffs to give him the opportunity of displaying his melodies for any stated number of times or on any stated occasions, or for any occasion at all. So that while, if he did sing, he was to receive compensation, his agreement to sing is not counterbalanced by any agreement of the plaintiffs to ask him to sing.

I do not overlook the other feature of the contract, that the plaintiffs agree to make the defendant the principal feature of their catalogue, and do all they can to boom his record. This promise may be something more than a mere sentimental benefit, but, apart from the enjoyment of appreciating the applause of the patrons of the plaintiffs, to be a principal feature of the catalogue of the plaintiffs would not be of advantage to attract compensation, so long as the defendant was employed at a stated price by the plaintiffs themselves, even if enhanced by the boom of the defendant's record, however far-reaching that benefit might be, in case of the defendant's seeking other employment. The booming, entirely coincident with the employment by the plaintiffs, does not furnish a consideration which would uphold the holding of the defendant to a service at all times upon the request of the plaintiffs, where the plaintiffs were not bound to proffer opportunities for any compensation whatever.

I am therefore of the opinion that the defendant shows a fair claim to a right to defend, so that, upon a trial, the conflicting responsibilities of the parties may be more precisely determined, especially as the injunction is broad and limitless in its character, dooming the defendant to musical silence even before friends or family. To restrain him thus would not only deprive him of the means of livelihood, but bring possible disaster to the health of one who, by training and education, may perchance find the most natural, effective expression to his vocal utterance in intonation or song. But, as the defendant has been guilty of laches to even more than an ordinary extent, his right to answer must be conditioned upon, not only payment of the motion costs, but also of the costs included in the judgment.

Ordered accordingly.