## JULIAN L. HERRESHOFF *vs.* A. BOUTINEAU.

An agreement by which one binds himself not to exercise his trade or profession is not void simply because the agreement covers the whole territory of the State.

Such an agreement, however, cannot be enforced if unreasonable, and it is unreasonable if its restriction extends beyond what is apparently necessary for the protection of the one in whose favor it is made.

A. hired B. as a teacher of languages for six months, taking an agreement that B. would not teach in the State for one year after the end of his service.

*Held,* that the agreement was unreasonable.

BILL IN EQUITY for an injunction. On demurrer to the bill.
*April* 14, 1890. STINESS, J. The complainant, director of a

school of languages in Providence, employed the respondent to teach French from January 7, 1889, to July 1, 1889. The contract, in writing, provided that the respondent would not, during the year after the end of his service, "teach the French or German language or any part thereof, nor aid to teach them, nor advertise to teach them, nor be in any way connected with any person or persons or institutions that teach them in the said State of Rhode Island." The respondent's service ended July 1, 1889; after which time he gave lessons in French in Providence. This suit is brought to restrain him from so doing within the time covered by this contract. The respondent demurs to the bill; contending, first, that the contract is void on the ground of public policy, because it imposes a general restraint throughout the State; and, secondly, because it is unreasonable.

Is the contract void? For a long time, beginning with the Year Books, contracts limiting the exercise of one's ordinary trade or calling met with much disfavor in the courts. Any limitation whatever was considered, in the first reported case, Year Book, 2 Hen. V. Pasche, fol. 5, case 26, so far contrary to law that a plaintiff suing thereon was sworn at by the judge and threatened with a fine. But it was soon found that, to some extent at least, such contracts help rather than harm both public interests and private welfare; that they are necessary to trade itself, in order to secure the sale, at fair value, of an established business, by protecting it against the immediate competition of the seller; also to enable one to learn a trade or get employment from another, free from the risk of having the knowledge and influence thus gained used to the employer's damage; to encourage investment in business enterprises under reasonable safeguards; and for other equally evident reasons. Accordingly exceptions to the early doctrine were recognized from time to time until the leading case of *Mitchel* v. *Reynolds*, 1 P. Wms. 181, when the court established the rule that a contract in restraint of trade, upon consideration which shows it was reasonable for the parties to enter into it, is good; "that wherever a sufficient consideration appears to make it a proper and useful contract, and such as cannot be set aside without injury to a fair contractor, it ought to be maintained, but with this constant diversity, viz., where the restraint is general, not to exercise

a trade throughout the kingdom, and where it is limited to a particular place; for the former of these must be void, being of no benefit to either party, and only oppressive." It is to be observed that the contract in this case was limited in time to five years, the term of the lease of a bake house which the plaintiff had bought of the defendant; and also limited in space to the parish of St. Andrew's, Holborn. The case therefore did not call for decision upon a contract running throughout the kingdom. Nevertheless, it has since been commonly assumed as the settled rule of law that such a restraint is contrary to public policy and void. The principle upon which this rule is put is, that the public have the right to demand that every person should carry on his trade freely, both for the prevention of monopoly and of unprofitable idleness. The argument is, if the restraint is general throughout the realm, the public interest is interfered with, since the party restrained can only resort to his trade for a livelihood by expatriation. But if the restraint be local and partial, the party and the public may still have the benefit of his services in his own land, in some other place. While this distinction has frequently been recognized, the cases in which it has had the sanction of a decision have been few. In *Rousillon* v. *Rousillon*, L. R. 14 Ch. Div. 351, Fry, J., mentions only two, and these, he says, seem to have been decided upon the ground of unreasonableness rather than upon the ground of universality. In other words, the universality was held to be unreasonable. This case, following *Whittaker* v. *Howe*, 3 Beav. 383; *Jones* v. *Lees*, 1 H. & N. 189; and *Leather Cloth Co.* v. *Lorsont*, L. R. 9 Eq. 345, expressly holds there is no absolute rule that a covenant in restraint of trade is void if it is unlimited in regard to space. The respondent urges that *Rousillon* v. *Rousillon* has been overruled by the recent case of *Davies* v. *Davies*, L. R. 36 Ch. Div. 359; but we do not think this is so. While Cotton, L. J., showing great willingness if not anxiety to overrule it, based his opinion upon the ground that the restriction was void because unlimited in space, Bowen, L. J., did not put his decision on that ground, and Fry, L. J., adhered to his opinion in *Rousillon* v. *Rousillon*. That *Davies* v. *Davies* was not received in England as overruling the last-named case, see note to the case in Law Quarterly Review, vol. 4, p. 240. In view of these cases we do not

# 6    HERRESHOFF *v.* BOUTINEAU.

think it is now the rule in England that restraint throughout the kingdom is absolutely void. In this country the cases have been quite similar to those in England. In the recent case of *Diamond Match Co.* v. *Roeber*, 106 N. Y. 473, Andrews, J., says: "It is worthy of notice that most, if not all, the English cases which assert the doctrine that all contracts in general restraint of trade are void, were cases where the contract before the court was limited or partial. The same is generally true of the American cases." In that case the defendant covenanted, for the period of ninety-nine years, not to engage in the manufacture or sale of friction matches within any of the States or Territories of the United States, except Nevada and Montana. The complainant sought to restrain a breach of that covenant in New York, the respondent claiming that the covenant, being general as to New York, was void. But the court declared it to be valid, in a strong and thorough opinion, showing the history of litigation and the tendency of recent judicial decision upon this subject. Taking this case in connection with *Oregon Steam Navigation Co.* v. *Winsor*, 20 Wall. 64, we think it cannot be said here, any more than in England, that a restraint is absolutely void, upon grounds of public policy, because it extends throughout a State. Public policy is a variable test. In the days of the early English cases, one who could not work at his trade could hardly work at all. The avenues to occupation were not as open nor as numerous as now, and one rarely got out of the path he started in. Contracting not to follow one's trade was about the same as contracting to be idle, or to go abroad for employment. But this is not so now. It is an every-day occurrence to see men busy and prosperous in other pursuits than those to which they were trained in youth; as well as to see them change places and occupations without depriving themselves of the means of livelihood, or the State of the benefit of their industry. It would therefore be absurd, in the light of this common experience, now to say that a man shuts himself up to idleness or to expatriation, and thus injures the public, when he agrees, for a sufficient consideration, not to follow some one calling within the limits of a particular State. There is no expatriation in moving from one State to another; and from such removals a State would be likely to gain as many as it would lose. We do not think public

policy demands an agreement of the kind in question to be declared void, and we do not think such a rule is established upon authority. We therefore hold that the agreement set out in the bill is not void simply because it runs throughout the State.

Is the contract unreasonable? Courts should be slow to set aside as unreasonable a restriction which has formed a part of the consideration of a contract. Yet when it is a restriction upon individual and common rights, which only oppresses one party without benefiting the other, all courts agree that it should not be enforced. In determining the reasonableness of a contract, regard must be had to the nature and circumstances of the transaction. For example, if one has sold the good-will of a mercantile enterprise, receiving pay for it upon an agreement not to engage in the same business in the same State for a certain time, such a stipulation would stand upon quite a different footing from the similar stipulation of a mere servant in an ordinary local business. In many undertakings, with modern methods of advertising and facilities for ordering by telegraph or mail and sending goods by railroad or express, it would matter little whether one was located at Providence or Boston or some other place. In such cases a restriction embracing the State or even a larger territory could not be said on that account to be unreasonable, for without it the seller might immediately destroy the value of what he sold and was paid for.. But it is unreasonable to ask courts to enforce a greater restriction than is needed. So it has been uniformly held that restrictions which go too far are void. As was said in the note of the Law Quarterly Review, above cited: " Covenantees desiring the maximum of protection have no doubt a difficult task. When they fail, it is commonly because, like the dog in the fable, they grasp at too much, and so lose all." Beside the matter of protection, the hardship of the restriction upon the party and the public should also be considered.

In the present case, we think the restriction is unreasonable. Not, as a rule of law, because it extends throughout the State, but because it extends beyond any apparently necessary protection which the complainant might reasonably require, and thus, without benefiting him, it oppresses the respondent, and deprives people in other places of the chance which might be offered them to learn

8  HERRESHOFF *v.* BOUTINEAU.

Providence County.         Opinion of the Court.

the French and German languages of the respondent. The complainant urges that he has established a school in Providence, at great expense, to teach languages by a new method, where scholars come from all parts of the State ; and that, by reason of the small extent of the State and the ease of passing to and fro within it, such a restriction is reasonable and necessary to keep teachers from setting up similar schools and enticing away his scholars. All this may be true with reference to Providence and its vicinity. But while, as is averred, many pupils, from all parts of the State, may come to Providence as a centre, for the same reason few would go to other places. For example, a school in Westerly or Newport would not be likely to draw scholars from Providence, or places from which Providence is more easily reached. Indeed, the complainant says he offered, after the contract was made, and now offers, to allow the respondent to teach in Newport ; thereby admitting that the restriction is greater than the necessity. The people of Newport, Westerly, and other places have the right to provide for education in languages without coming to Providence. It is hard to believe, and the bill does not aver, that losing the few, if any, from some such place, who might leave the complainant if the respondent were to teach there, would seriously affect the complainant's school. Teaching in Providence, or in any place from which the complainant receives a considerable number of pupils, might affect it, and a restriction limited accordingly might be reasonable ; but we think it is unreasonable to go further.

The complainant bought nothing of the respondent whose value he now seeks to destroy. He hired the latter as a teacher at no more than fair wages. He needs and has the right only to be secured against injury to his school from teachers who may entice away his scholars after leaving his employ. The contract clearly goes beyond this. The demurrer must be sustained.

*Demurrer sustained.*

*Amasa M. Eaton*, for complainant.
*Albert A. Baker*, for respondent.