ROBERT W. SIMMS, *Appellant,* v. CHARLES B. BURNETTE, *Appellee.*

1. A breach of contract for ordinary personal service is fully remediable at law.

2. Equity will not enjoin a breach of contract of a book keeper not to engage in the liquor business in the State in the absence

of some special equity, involving good-will, peculiar intellectual or other skill or capacity, secret process of business or other recognized ground.

3. The knowledge acquired by a book keeper as to where and what his employer buys and to whom he sells does not authorize an injunction against a breach of contract not to enter into similar business, there being no trade secret or secret process involved.

4. Difficulty in detecting all the violations of a contract and alleged insolvency of the defendant do not make out an equity for injunction upon an original bill.

This case was decided by Division A.

Appeal from the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*Jno. E. Hartridge,* for appellant;

*Bryan & Bryan,* for appellee.

COCKRELL, J.—This is an appeal from an order sustaining a demurrer to a bill praying that Burnette be enjoined from engaging in the liquor business in the state of Florida.

The allegations of the bill show that Burnette, a drug clerk in Asheville, N. C. was employed as book-keeper by Simms, an extensive wholesale liquor dealer in Jacksonville, the terms of the contract being embodied in the two letters here set out:

"April 9th, 1906.

Mr. C. B. Burnette,
    Asheville, N. C.

Dear Sir:—I will be pleased to have you enter my employ as book-keeper. I will pay you a salary of one

hundred dollars per month for a period of two years from May 1st, 1906.

You are to give your entire time to my business and to perform same in a satisfactory manner, and in the event of your ever leaving me for any cause, you to agree to never enter into the liquor business with any other firm in the state of Florida.

I would like you to report at my office for duty as soon as possible, but in no event not later than May 1st, 1906.

Yours truly,
(Signed) Robt. W. Simms."

"Mr. Robt. W. Simms,

Jacksonville, Fla.

Dear Sir:—I hereby accept the above proposition and will make every effort to perform my duties to your satisfaction. I will arrange to be on hand ready for work as soon as possible, and in no event not later than May 1st, 1906.

Respectfully,
(Signed) Chas. B. Burnett."

The inducement for the insertion of the negative clause in the contract is set forth by the pleader in the ninth paragraph of the bill.

"9.  That your orator, mindful of the damage and hurt that would come to him if he, the said Charles B. Burnett, after becoming familiar with his business and the names of dealers from whom he purchased and of his patrons and customers and their addresses, should leave his service and engage in the liquor business for himself or with another, or as the clerk or agent of another, or with any other firm in the state of Florida was moved by such consideration to insist that the contract of employment entered into by and between said Charles B. Burnett and your orator should contain a clause of a char-

acter to protect your orator as against the use of any information, knowledge and experience which the said Charles B. Burnett might gain while in your orator's service and to that end and in consideration of the employment of said Charles B. Burnett by your orator for the term of two years at a salary of twelve hundred dollars per year, the said Burnett consented and agreed that a clause should be inserted in said contract of employment by the terms of which the said Burnett was not to sell liquor in the state of Florida."

It is charged that Burnette secretly made copies from the books of the principal dealers from whom the liquors were bought, the prices at which they were bought and sold, and the names and addresses of the customers and in violation of the contract, left the employer's service and was about to engage in the liquor business in Jacksonville, in partnership with another former employe, in competition with the complainant, with intent to use the knowledge and experience so gained to the detriment and hurt of the latter.

The bill further represents that it would be impossible to detect all the violations of the contract or if not absolutely impossible a multitude of common law actions would be necessary and it would be so burdensome as practically to destroy the remedy, and moreover that the defendant is insolvent.

The view we take of this contract renders much of the discussion in the briefs of counsel useless. The case does not present a question as to the reasonableness of the contract, tested by the "restraint of trade" rule, but whether a court of equity will intervene to enforce specific performance thereof negatively by enjoining its breach.

Burnette had no "good will" to sell, nor did he possess any peculiar intellectual or other skill or capacity that could not readily be supplied by the ordinary de-

45

mands for employment. There is no trade secret or secret process involved in the sense it is understood as a basis for equitable interference; on the contrary the bill alleges nothing more than that universal knowledge gained by every successful business of long standing, as to where and what it is best to buy and where best to sell. His employment for a few months as bookkeeper gave him no direct contact with the complainant's customers, so as to create a personal influence and following upon and among them, which might be carried as an asset to the new firm.

The secret copying from the books of the names of the dealers and of the prices and the names of the complainant's customers is an allegation tending to show bad faith, but no authority has been cited to us, nor have we found any adjudicated case holding that this fact alone would authorize an injunction against the one committing such breach of faith entering into business at all. In short the bill alleges nothing but the breach of a contract for ordinary personal service, as to which it does not appear that the common law remedy is not fully adequate.

The allegations of the bill do not make out an equity on the ground of multiplicity of the common law actions. The fact of insolvency does not deprive one of his constitutional right to have decided by a jury which of the parties breached the contract, and while it may feed another equity, it is too weak of itself to support a bill for injunction.

The demurrer was properly sustained, and the order thereon is affirmed.

SHACKLEFORD, C. J., and WHITFIELD, J., concur;

TAYLOR, HOCKER, and PARKHILL, JJ., concur in the opinion.