THE SAMUEL STORES, INCORPORATED, *vs.* AARON H. ABRAMS.

Third Judicial District, Bridgeport, October Term, 1919.
WHEELER, BEACH, GAGER, CASE and CURTIS, Js.

Whether a covenant in restraint of trade is reasonable or not, is to be determined in the light of the public policy of the present time, as that may be affected by the changing conditions of life.

The law allows the vendor of a business to subject himself to a degree of restriction which is not permitted to an employee. In the former case the restrictions add to the value of the subject-matter of the sale in the estimation of both vendor and vendee, who presumably stand upon a more equal footing than is usually the case in negotiations between employer and employee. In order to enforce a restriction against an employee, it must appear, from the facts alleged, that the restraint in question is reasonably necessary for the fair protection of the employer's business or rights, and at the same time does not unreasonably curtail the rights of the employee, due regard being had to the interests of the public and the circumstances and conditions under which the contract is to be performed.

In the present case the defendant became manager of one of the plaintiff's branch clothing stores, located in Bridgeport, under an agreement which provided, in substance, that for five years after he left the plaintiff's employment he would not connect himself with any firm engaged in a like business which would compete with the business of the plaintiff in any city in which it maintained one of its branch stores. *Held* that this restriction exceeded what was reasonably necessary to protect the business of the plaintiff, and that the enforcement of its sweeping provisions would be a useless and undue curtailment of the defendant's liberty of trade and employment, and an unjustified restraint on competition.

Argued November 5th—decided December 22d, 1919.

SUIT for an injunction to restrain the defendant from engaging in business in Bridgeport in competition with the plaintiff, in alleged violation of his contract, brought to the Court of Common Pleas in Fairfield County where a demurrer to the complaint was sustained

(*Walsh, J.*) and judgment rendered for the defendant, from which the plaintiff appealed. *No error.*

The complaint contained the following allegations:—

"1. The plaintiff is a corporation engaged in the sale of clothing for men, women and children and conducts a store for said purpose in said City of Bridgeport. 2. On June 4th, 1918, the plaintiff and the defendant entered into a written contract, a copy of which is hereunto attached as Exhibit A, by which contract the plaintiff engaged the services of the defendant as manager for one of its branch stores for a period of one year from September 5th, 1918, for the compensation stated in said agreement, which contract is still in force. 3. By the provisions of said contract the said defendant agreed that he would not engage in any business that would compete with the business of the party of the first part for five years after the date of the termination of his connection with the plaintiff, and that in the event of his so doing, the plaintiff would be entitled to an injunction restraining him from continuing such business. 4. The said defendant, under and in pursuance of said contract, entered into the service of the said plaintiff and continued in such service until November —, 1918, when the defendant left the employ of the plaintiff. 5. The defendant, in the course of his said employment, acquired information and knowledge of confidential matters relating to the conduct of said business, including a list of the customers of such business. 6. The defendant, in violation of his said agreement, on December 9th, 1918, opened a store in said Bridgeport and engaged in the business of selling clothing for men, women and children and engaged in the same line of business conducted by the plaintiff in said Bridgeport and engaged in business in competition with the plaintiff, in violation of the said agreement, and has advertised himself as formerly with 'The

People's Store,' the same being the trade name under which the plaintiff has been conducting business in said Bridgeport and has been and is soliciting the customers of the plaintiff to trade with him, the defendant. 7. The plaintiff has fully performed all the provisions of said agreement on his part to be performed. 8. The plaintiff will be irreparably damaged by the continuation of said competitive business by the defendant and has no adequate remedy at law. The plaintiff claims: 1. That the defendant be enjoined from further conducting and continuing such business, and from soliciting the former and present customers of the plaintiff to trade with him. 2. Such other and further relief as to the court may seem proper."

Exhibit A recites that the defendant is engaged as manager for one year in one of the plaintiff's *branch stores.* Such other parts of Exhibit A as are essential are found in the opinion.

To this complaint the defendant filed a demurrer, upon the following ground, among others: "An injunction against the defendant as prayed for would be mischievous and against public policy."

This demurrer the Court of Common Pleas, *Walsh, J.,* sustained, and the plaintiff appealed.

*John Keogh* and *John T. Dwyer,* for the appellant (plaintiff).

*Alexander L. DeLaney,* for the appellee (defendant).

CURTIS, J. By the complaint and the contract, Exhibit A, attached thereto, the following facts are disclosed: The plaintiff is a corporation of the State of New York, and engaged in conducting branch clothing stores in various cities. It employed the defendant as manager of one of its branch stores for the period of one year

from September 5th, 1918, under the written contract attached to the complaint. The contract contains the following stipulation on the part of the defendant: "AND, whereas, in the course of such employment, AARON H. ABRAMS may be assigned to duties that may give him knowledge and information of confidential matters relating to the conduct and details of the business of THE SAMUEL STORES, INC. as to result in the opinion of THE SAMUEL STORES, INC. in irremediable injury to it, for which no money damages could adequately compensate, if the said party of the second part should enter the employment of rival concern while this contract was still in effect, the said AARON H. ABRAMS agrees not to engage in any other occupation during the life of this contract, and further agrees not to either directly or indirectly connect himself with any firm engaged in business similar to that of the party of the first part, which would compete with the business of the party of the first part, nor will he himself engage in any business that will compete with the business of the party of the first part, for five years after the date of his connection with the party of the first part being severed. The said AARON H. ABRAMS agrees to use his best endeavors and his entire time to promote the business and business interests of THE SAMUEL STORES, INC."

The defendant, in November, 1918, left the employ of the plaintiff, and on December 9th, 1918, opened a store in Bridgeport and engaged in the business of selling clothing for men, women and children, and engaged in the same line of business conducted by the plaintiff in Bridgeport, and has advertised himself as formerly with "The People's Store," that being the trade name under which the plaintiff has been conducting business in Bridgeport, and the defendant has been and is soliciting the customers of the plaintiff to trade with him.

This case presents the question whether or not the restrictive stipulation in the contract between the parties is void as against public policy.

The public policy to be applied is the public policy of the present time. The changing conditions of life modify from time to time the reasons for determining whether the public interest requires that a restrictive stipulation shall be deemed void as against public policy. The following statement of the law, found in the leading case of *Nordenfelt* v. *Maxim-Nordenfelt Gun & Ammunition Co.* (1895), 11 The Reports, 1, 27, is generally recognized as fundamental: "The true view at the present time, I think, is this:—The public have an interest in every person's carrying on his trade freely; so has the individual. All interference with individual liberty of action in trading, and all restraints of trade of themselves, if there is nothing more, are contrary to public policy, and therefore void. That is the general rule. But there are exceptions: restraints of trade and interference with individual liberty of action may be justified by the special circumstances of a particular case. It is a sufficient justification, and, indeed, it is the only justification, if the restriction is reasonable—reasonable, that is, in reference to the interests of the parties concerned, and reasonable in reference to the interests of the public, so framed and so guarded as to afford adequate protection to the party in whose favor it is imposed, while at the same time it is in no way injurious to the public."

Under this principle, that the reasonableness of a restriction in view of all the circumstances and the interests of the public and the parties, is the test of its validity—certain basic considerations have developed as guides to covenantors and the courts. Some of these we will now consider. The cases in relation to restraints of trade soon disclose two leading classes of contracts:

contracts between the vendor and vendee of a business and its good will, and contracts between an employer and an employee. Under the law, restrictive stipulations in agreements between employer and employee are not viewed with the same indulgence as such stipulations between a vendor and vendee of a business and its good will. In the latter case the restrictions add to the value of what the vendor wishes to sell and also add to the value of what the vendee purchases. In such cases, also, the parties are presumably more nearly on a parity in ability to negotiate than is the case in the negotiation of agreements between employer and employee. In a restrictive covenant between a vendor of a business and the vendee, "a large scope for freedom of contract and a correspondingly large restraint of trade" is allowable. In a restrictive covenant between employer and employee, on the other hand, there is "small scope for the restraint of the right to labor and trade, and a correspondingly small freedom of contract."

In dealing with a restrictive stipulation between an employer and an employee, as in this case, in order that the court may uphold and enforce the restriction, if it is not otherwise contrary to public policy, the court must find that the facts alleged disclose a restriction on the employee "reasonably necessary for the fair protection of the employer's business or rights, and not unreasonably restricting the rights of the employee," due regard being had to the interests of the public, and the circumstances and conditions under which the contract is to be performed. *Eureka Laundry Co.* v. *Long*, 36 L. R. A. (N. S.) 119 note (146 Wis. 205, 131 N. W. 412); *Wm. Rogers Mfg. Co.* v. *Rogers*, 58 Conn. 356, 20 Atl. 467; *Simms* v. *Burnette*, 16 L. R. A. (N. S.) 389 note (55 Fla. 702, 46 So. 90); *Herbert Morris, Ltd.,* v. *Saxelby*, L. R. (1916) 1 App. Cas. 688; *Mason* v. *Provident Clothing & Supply Co., Ltd.,* L. R. (1913) App. Cas. 724; *Norden-*

*felt* v. *Nordenfelt-Maxim Gun & Ammunition Co.*, L. R. (1894) App. Cas. 535, 11 The Reports, 1, 27; *Konski* v. *Peet*, L. R. (1915) 1 Ch. Div. 530; *Herreshoff* v. *Boutineau*, 17 R. I. 3, 19 Atl. 712.

We are, then, to determine whether the facts set up in this complaint make it reasonably necessary for the fair protection of the plaintiff's business to hold that the restrictive stipulation in the contract should be enforced. This stipulation provides, in effect, that the defendant, for five years after he leaves the employ of the plaintiff, shall not either directly or indirectly connect himself with any firm engaged in business similar to that of the plaintiff, which would compete with the business of the plaintiff in any city where the plaintiff conducts one of its branch stores. It appears from the complaint that the services of the defendant contracted for by the plaintiff are not peculiar or individual in their character, nor purely intellectual, nor are they special or extraordinary services or acts. The defendant's services and the plaintiff's business are not of a character to involve the acquisition of special business secrets of the plaintiff by the defendant. The agreement relates merely to services in a local retail business, and primarily aims to restrict competition. The plaintiff conducts a local retail clothing business in which the defendant was employed as manager. The situation of manager could have been filled by any person of sufficient business capacity. The clothing business may be entered upon by any one who desires to enter it, and whether the defendant opened a competitive store, or another did so, was immaterial to the plaintiff, except that the defendant having acquaintance and knowledge of the plaintiff's customers might solicit their trade. The restriction in question provides, in substance, that in any city where the plaintiff carries on its business the defendant shall not directly or indirectly connect himself with any firm

engaged in business similar to that of the plaintiff, which would compete with the business of the plaintiff, for five years after his employment with the plaintiff ceases. This restriction, binding for that period and relating to every city in which the plaintiff has established a branch store, is not reasonably necessary for the fair protection of the plaintiff's business. It covers a number of cities in which the defendant, from his employment in one city, could have had no acquaintance with the local customers.

A restrictive agreement providing that the defendant while connected with a competing business should not solicit trade from persons who were customers of the plaintiff at the branch store where the defendant was employed during his employment, might fairly be claimed to be such a restriction as is reasonably necessary for the fair protection of the plaintiff's business. *Konski* v. *Peet*, L. R. (1915) 1 Ch. Div. 530. Such a restriction obviously would not unduly restrict the rights of the defendant, since it would not otherwise restrict the field of his employment than by prohibiting the solicitation of the clothing trade of a limited number of people in one city. By the sweeping terms of the restrictive stipulation in question, it is true that the solicitation of such customers of the plaintiff is indirectly prevented. But at what cost to the defendant? He is prohibited from entering or being employed in the clothing business in various cities, the number of which may be large, and the area in which he may exercise such experience in, and aptitude for, that business, as he may possess, is greatly limited. The reasonable and fair protection of the plaintiff's business does not require such an extended restriction of the defendant's field of employment. Public policy requires that the defendant's liberty of action in trading or employment shall not be unduly restricted. To enforce the sweep-

ing terms of this restriction would be a useless, unnecessary and undue curtailment of the defendant's liberty of trading and employment, and an unjustified restraint on competition.

The case at bar illustrates the following comment found in *Herreshoff* v. *Boutineau,* 17 R. I. 3, 7, 19 Atl. 712: "Covenantees [in contracts in restraint of trade between employer and employee] desiring the maximum protection have no doubt a difficult task. When they fail, it is commonly because, like the dog in the fable, they grasp too much, and so lose all."

There is no error.

In this opinion the other judges concurred.