Smithereen Company, Appellant, v. Clyde E. Renfroe,
Trading as Renfroe Exterminating Service, Ap-
pellee.

Gen. No. 43,015.

Heard in the third division of this court for the first district at the April term, 1944. Opinion filed February 14, 1945. Released for publication March 5, 1945.

ECKHART, KLEIN, McSWAIN & CAMPBELL, of Chicago, for appellant; JOHN NEAL CAMPBELL and M. A. PALUMBO, both of Chicago, of counsel.

PETER F. McNAMEE and KELLAM FOSTER, both of Chicago, for appellee.

MR. JUSTICE LUPE delivered the opinion of the court.

This was an action in equity by The Smithereen Co., a corporation, against Clyde E. Renfroe, doing business as Renfroe Exterminating Service, a former employee of the plaintiff. Plaintiff by its action sought to restrain the defendant from engaging in business in competition with the plaintiff for a period of five years from the date of the termination of defendant's employment with plaintiff and for other relief. The request for this relief was predicated upon the terms of a written agreement between the plaintiff and the defendant dated November 1, 1935. This agreement between the parties is as follows:

Agreement made this 1st day of November, A. D. 1935 between the Smithereen Company, a corporation, of Chicago, Illinois, party of the first part, and C. E. Renfroe, party of the second part,

WITNESSETH,

In consideration of my employment by the Smithereen Company, I covenant and agree as follows:

1. That on the termination for any cause whatsoever of my employment with the Smithereen Company that

I will not engage in the same line, or similar line of business as that now carried on by the Smithereen Company, or engage to work for any individual firm or corporation engaged in such line or a similar line of business or engaged in the manufacture, sale or distribution of any chemical specialties, fumigants, insecticides, or equipment for the application of same or any product or products similar to or having the same purpose as the products made and sold by the Smithereen Company, in the City of Chicago, State of Illinois, for a period of five (5) years from the time the employment by the Smithereen Company shall cease.

2. I further agree that I will not, during the term of my employment by the Smithereen Company, or at any other time thereafter, furnish to any individual, firm or corporation, other than the Smithereen Company, any list or lists of customers or information as to the products of the Smithereen Company, or in any way pertaining to the business of the Smithereen Company.

3. I further agree that any inventions and formulas which shall result from my employment, and pertaining to the business of the Smithereen Company, shall at the request of said company, be protected by patents which patents shall become the sole property of the said Smithereen Company.

Given under my hand and seal the day and year first above written.

C. E. Renfroe (Seal)

Witnesseth:

The Smithereen Co.,

By H. E. Jennings, V. P.

The plaintiff has been engaged in the pest extermination business and for a number of years has had four offices in the City of Chicago. Its main office was located in the Loop, and its three other offices

were branch offices on the south, north and west sides of Chicago, respectively. The business of plaintiff covers the whole City of Chicago and its customers include hotels, hospitals, apartment buildings, homes, etc. The defendant became an employee of the plaintiff on August 16, 1932, and worked as a serviceman, servicing apartments in exterminating work, out of plaintiff's north side office, and continued with service· work until October 30, 1932, when he began to work as a salesman for plaintiff. In July 1933, defendant became manager of plaintiff's north side office and continued in that capacity until March 15, 1941, when he left plaintiff's employ.

On April 1, 1941, defendant entered the exterminating business at 1829 Irving Park Blvd. on the north side of Chicago, in competition with plaintiff and sent out an announcement in which he stated that he was now engaged in the exterminating business and would endeavor to render the same high quality of service to his customers and friends to which they had become accustomed during the nine years that defendant was employed by the plaintiff; that he would render prompt and efficient service for any exterminating job, large or small, servicing Chicago and suburbs; that he desired to thank all his customers and friends for their generous support given him in the past; and that their confidence and support had made possible the starting of his own business, and that he would do everything within his power to uphold that confidence. The defendant continued in this competing business, the service rendered by the defendant being similar in all respects to that of plaintiff. The services of both plaintiff and defendant were being conducted and operated in the City of Chicago, at the time this suit was instituted.

Plaintiff brought this action to secure a permanent injunction restraining the defendant for a period of five years from April 1, 1941, from engaging either

by himself or as an employee of others in the City of Chicago in the business of exterminating insects, etc.; also from engaging in the manufacture, sale or distribution of any chemical specialties, fumigants, insecticides or equipment for the application of same; and from furnishing to any person, other than plaintiff, any list or lists of customers or information as to the products of the plaintiff, or any information pertaining to the business of plaintiff; and that an accounting be taken for the loss and damage sustained by the plaintiff by reason of the wrongful acts of the defendant, and the profits which resulted to the defendant through the conduct of said competing business.

The defendant filed his answer herein contending that the said agreement was in restraint of trade, was contrary to the public policy of this State, and was therefore void; and that he did not receive or have any list or lists of names of plaintiff's customers and did not receive or have any information of any trade secrets, trade methods, formulae, or any other confidential information in regard to plaintiff's business, other than that within his knowledge prior to his employment with the plaintiff.

The cause was referred to a master in chancery who made a report to the court, finding that the contract between the plaintiff and defendant was reasonable and valid; that the defendant was actually made aware of the business secrets and methods of the plaintiff, was given by plaintiff a list of plaintiff's customers, and information with reference to the contracts of plaintiff with its customers; that he engaged in a business in competition with plaintiff; and that he induced customers of the plaintiff to cancel their contracts with the plaintiff and induced employees of the plaintiff to cease their connections with plaintiff and become associated with or employed by the defendant.

The cause came on for hearing on exceptions to the master's report and the chancellor sustained the exceptions to said report and dismissed the complaint for want of equity. This appeal followed.

The development of the law with respect to restrictive covenants in partial restraint of trade is well set up in the case of *Tarr v. Stearman,* 264 Ill. 110, where the court said (p. 118):

"It has always been the policy of the law to promote the freedom of engaging in and carrying on all kinds of trades and professions which are beneficial to the public. (2 Pomeroy's Eq. Jur., 3d ed., sec. 934.) Formerly by the common law all contracts in restraint of trade were void. (24 Am. & Eng. Ency. of Law, 2d ed., 842.)

The law on this subject has undergone changes and the authorities at the present time are not in harmony. (2 High on Injunctions, 4th ed., sec. 1167; *Allen Manf. Co. v. Murphy,* 20 Ann. Cas. [Ont. L.] 657, and note.) It is sometimes said that equity is loath to enforce a contract in restraint of trade, even though it be good law, if the terms are harsh or complex. (Bispham's Principles of Equity, 7th ed., sec. 227.) The authorities now generally agree that contracts in partial restraint of trade are valid if reasonable as to time, place, terms, etc., and manifest an intention to protect the party relying upon the covenant in the reasonable restraint of unjust discrimination against him. (*Southern Fire Brick Co. v. Sand Co.,* 223 Ill. 616.)"

An examination of the authorities shows that restrictive covenants involving partial restraint of trade usually arise in connection with contracts for the sale of a business, a professional practice, or large stockholdings in a corporation, and in cases wherein contracts of employment are involved.

With respect to restrictive covenants made in connection with the sale of a business, a professional

practice, or large stockholdings in a corporation, the authorities are in accord that a restrictive covenant in partial restraint of trade is valid, so long as the restrictive covenant is reasonable as to time, place, etc., and can be said to have been entered into to fairly protect the covenantee in the property rights which he has acquired from the covenantor.

Such restrictive covenants which are too broad or too general are held invalid. This is clearly demonstrated by the holding in the following cases: *Lanzit v. J. W. Sefton Mfg. Co.,* 184 Ill. 326; *Union Strawboard Co. v. Bonfield,* 193 Ill. 420; *Parish v. Schwartz,* 344 Ill. 563. But restrictive covenants which are reasonable as to time and place are generally held valid. This is clearly demonstrated in the following cases: *Hursen v. Gavin,* 162 Ill. 377; *Jules Chain Store Corp. v. Stone,* 316 Ill. App. 45; *Peltz v. Eichele,* 62 Mo. 171; *Washburn v. Dosch,* 68 Wis. 436.

Contracts for the sale of goodwill of a profession to another of the same profession with a restrictive covenant by the vendor not to engage in such profession within a limited territory wherein the vendee is continuing the practice of his profession in a limited territory are generally held valid. This is shown in the cases of *Linn v. Sigsbee,* 67 Ill. 75; *Ryan v. Hamilton,* 205 Ill. 191; *Storer v. Brock,* 351 Ill. 643.

An exception to this rule appears in cases where the public interests are involved. Even though a contract be fair and reasonable between the parties, yet, if the effect of it is so injurious to the public interest that the public policy requires that it shall not be enforced, it will be held void. An example of this exception is shown in the case of *Tarr v. Stearman,* 264 Ill. 110, where Tarr was in the business of renting and occupying dental offices and employing licensed dentists to run them. Tarr employed Stearman to run an office under a written contract of employment which provided that upon the termination of Stearman's

services Stearman would never, in the City of Springfield or within 25 miles thereof, be engaged, directly or indirectly, in behalf of himself or with others, in the practice of dentistry. The court, in holding said restrictive covenant invalid, said that the interest of the public was paramount; that the convenience of a given community or locality would be promoted if every such locality had its proper accommodations and service from every art, trade and profession; that a contract in restraint of trade or profession in any given locality could not be upheld unless it should be shown that the place of such individual so restrained would be supplied by some other persons of the same trade or profession; that there was no such showing in that case and that, therefore, the agreement was unreasonable and void.

The cases involving contracts between employer and employee which contain restrictive covenants prohibiting the employee from engaging in a business competing with that of his employer subsequent to his employment are numerous. We find in this class of cases that the employer's right to injunctive relief depends upon a showing by the employer that, by reason of the character of the employment or the services rendered by the employee, the employee has had close and intimate contacts with the employer's customers or has obtained such knowledge of the employer's business that to use such knowledge and acquaintanceship in a competing business would result in irreparable injury to the employer.

This rule is clearly laid down in the cases of *Jules Chain Store Corp. v. Stone,* 316 Ill. App. 45; *Whittenberg v. Williams,* 110 Colo. 418; *Samuel Stores, Inc. v. Abrams,* 94 Conn. 248; *Grand Union Tea Co. v. Walker,* 208 Ind. 245; *Eigelbach v. Boone Loan & Investment Co.,* 216 Ky. 69.

In the case of *May v. Young,* 125 Conn. 1, a restrictive covenant by an employee against entering into

the employ of any client of the employer for a period of two years subsequent to the employment was upheld as reasonable, the court saying, at pages 6 and 7:

"A bargain by an employee not to compete with his employer during the term of the employment or thereafter 'within such territory and during such time as may be reasonably necessary for the protection of the employer . . . , without imposing undue hardship on the employee' does not impose unreasonable restraint of trade unless effecting, or forming part of a plan to effect, a monopoly. Restatement, Contracts, Vol. 2, sec. 516 (f).

"Agreements by which an employee undertakes not to enter a competing business or employment on leaving his employer's service are reasonably necessary for the protection of the employer's business. Under such agreements parties obtain employment on certain terms which prevent them, on leaving that employment, from making use of knowledge which they have acquired during that employment to the detriment of their employer. *Middleton v. Brown,* 47 L. J. Ch. 411, 412; 13 C. J. 485. When the character of the business and the nature of the employment are such that the employer requires protection for his established business against competitive activities by one who has become familiar with it through employment therein, restrictions are valid when they appear to be reasonably necessary for the fair protection of the employer's business or rights, and do not unreasonably restrict the rights of the employee, due regard being had to the subject-matter of the contract and the circumstances and conditions under which it is to be performed. Especially if the employment involves the imparting of trade secrets, methods or systems and contacts and associations with clients or customers it is appropriate to restrain the use, when the service is ended, of the knowledge and acquaintance, so acquired, to injure or appropriate the business which the party

was employed to maintain and enlarge. 6 R. C. L., pp. 805, 806. The employer is entitled to contract for and to enforce protection against unfair competition made dangerous by the use of weapons placed by him in his employee's hands during his service and which may be turned against him, such as the knowledge of trade secrets or other confidential information or an acquaintance with his employer's customers and their requirements, resulting from the nature of the employee's services, which is regarded as a species of good will in which the employer has a proprietary interest."

Contracts have frequently been upheld whereby salesmen, agents, canvassers and other employees who come in personal contact with their employer's customers, agree not to engage in a competitive business in a limited time and area after leaving their employer's service. *Thomas W. Briggs Co. v. Mason,* 217 Ky. 269; 13 C. J. 485.

Courts will uphold and enforce such restrictions, if not otherwise contrary to public policy, where they find that the facts alleged disclose a restriction on the employee reasonably necessary for the fair protection of the employer's business or rights and not unreasonably restricting the rights of the employee, due regard being had to the interest of the public and the circumstances and conditions under which the contract is to be performed. (*Samuel Stores, Inc. v. Abrams,* 94 Conn. 248, 108 Atl. 541, 9 A. L. R. 1450.)

Covenants of this character, though recognized to be in partial restraint of trade, are sustained where properly limited as to time and territory and are not otherwise against public policy, the test generally being whether the restraint is necessary for the protection of the business or goodwill thereof, the injury to the employee which must not be greater than is reasonably necessary to secure the business of the employer, or the goodwill thereof, regard being

had to the injury which may result to the public by restraining the breach of the covenant, in the loss of service and skill of the employee, and the danger of his becoming a charge upon the public being taken into due consideration. (*Thomas W. Briggs Co. v. Mason,* 217 Ky. 269.)

■ A covenant inserted in a contract for personal service restricting trade or competition, or freedom of employment, is valid and may be enforced in equity, provided it is necessary for the protection of the employer, is not injurious to public interest, and is reasonably limited in time and space. What is reasonable depends upon the facts. (*Economy Grocery Stores Corp. v. McMenamy,* 290 Mass. 549; *Sherman v. Pfefferkorn,* 241 Mass. 468; *Becker College of Business Administration and Secretarial Science v. Gross,* 281 Mass. 355.) And to the same effect see *Holland Furnace Co. v. Connelley,* 48 Fed. Supp. 543; *Harry Livingston, Inc. v. Stern,* 69 Ohio App. 105, 43 N. E. (2d) 302.

■ From the above it can be seen that it is generally held that contracts of employment whereby managers, branch managers and other employees, who come into personal contact with their employer's customers, agree not to enter into competition with the business of the former employer are valid and enforceable, where such restrictive covenants are for a limited time, within a limited area and such limitations are reasonably necessary for the protection of the employer's business. These contracts containing restrictive covenants which impose restrictions greater than are reasonably necessary for the protection of the former employer's business, or unreasonably restrictive upon the rights of the employee or in contravention of the public interest are held invalid.

■■ We find the decision of every case involving restrictive covenants similar to those set up in the contract between the plaintiff and the defendant in

this case in great measure is determined and governed by the facts of each particular case. In the present case the defendant was branch manager of the north side branch of plaintiff. In that capacity he gained acquaintances and sold customers by using the good-will of the plaintiff. The business of the plaintiff is to a large extent built upon the confidence of its customers, through long experience. The manner and operation of plaintiff's business was peculiar in that it was necessary to use certain chemicals in combination and mixture, and the evidence justifies the conclusion that at least one of the formulae used by plaintiff was a secret process, and the defendant became thoroughly familiar with such methods and processes used by the plaintiff.

The defendant's position as branch manager of the north side branch of the plaintiff and the fact that he had previously worked out of other offices of the plaintiff, together with his having acquired knowledge of the methods and processes used by the plaintiff, gave the defendant confidential information that should not have been divulged to others or used for his own benefit.

The evidence herein justifies the finding of the master that the defendant induced a number of customers of the plaintiff to cancel their contracts with the plaintiff and to enter into a contract with the defendant; and that he also induced employees of the plaintiff to sever their relations with the plaintiff and to enter the employ of the defendant. The evidence further justifies the conclusion that the defendant solicited business from customers of the plaintiff whose names he had learned while its branch manager, setting forth in his announcement that he would endeavor to render the same high quality service to which his customers and friends had been accustomed during the nine years that he was employed by plaintiff; that he would render prompt and efficient service for any ex-

terminating job, large or small, servicing Chicago and suburbs; and that he thanked all his customers and friends for the generous support given him in the past and that their confidence and support had made it possible for him to start his own business.

From this evidence it is clear that the defendant has violated his contractual obligation not to engage in competition with the business of plaintiff; that the defendant is availing himself of information with respect to the names of customers and the methods, formulae, etc., used by the plaintiff in its business; and that the defendant is using this personal, if not altogether confidential information acquired during his employment with the plaintiff for his own personal benefit. This defendant should not be shielded by a court of equity from the deliberate violation of his contractual obligation, when it is apparent that such conduct involves the appropriation and misuse of information entrusted to him in the course of employment to which the contract relates. It is apparent to us that the plaintiff has and will continue to suffer irreparable injury from the kind of competition which defendant is giving to the plaintiff.

For the reasons indicated, we are of the opinion that the restrictive covenants of the contract entered into by the plaintiff and defendant do not impose a restraint beyond that reasonably required for the protection of the plaintiff's business, that such provisions are not unreasonably restrictive upon the rights of the defendant and do not contravene public policy and are therefore valid and enforceable.

With reference to the contention of the defendant that there was no mutuality of contract between the parties, because the written agreement does not bind plaintiff to employ defendant in any capacity for any specific period of time, the written agreement shows that same was made in consideration of the employment of defendant by the plaintiff; the evidence shows

that the defendant signed said contract after making several changes in same; that the defendant continued in the employ of the plaintiff for a period of approximately five years after the execution of said agreement; that the plaintiff retained the defendant in its employ at a salary acceptable to the defendant and complied with the terms of the employment in all details; and that the defendant voluntarily left the employ of plaintiff.

If it be regarded that the contract in the instant case is indefinite as to the terms of the employment, still it is an established principle of law that an agreement too indefinite and vague for enforcement at its inception may be made definite by performance. *(Roessler v. Burwell,* 119 Conn. 289 and cases there cited; *Walker Coal & Ice Co. v. Westerman,* 263 Mass. 235.)

In the case of *Economy Grocery Stores Corp. v. McMenamy,* 290 Mass. 549, there was no agreement on the part of the plaintiff to employ the defendant for any fixed or definite period, and nothing was said as to how long the employee should work for the employer. The court in passing on the agreement said (p. 552):

"The contract was not void for lack of consideration. When accepted and acted on by the plaintiff, it implied according to its reasonable construction a promise on the part of the plaintiff to employ the defendant. It was not wanting in mutuality. The amount of compensation to be paid was fixed by separate agreement."

So in the present case the compensation and term of employment of the defendant by the plaintiff was fixed by a separate agreement and same was fully performed by the plaintiff and accepted by the defendant. The contract here in issue was not void for want of mutuality.

The plaintiff was entitled to the relief recommended by the master, and the chancellor erred in sustaining the defendant's exceptions to the master's report, and in dismissing the complaint for want of equity. The decree is reversed and the cause is remanded to the circuit court with directions to overrule the exceptions of the defendant to the master's report and to enter a decree in accordance with the recommendations of the master's report.

*Reversed and remanded with directions.*

BURKE, P. J., and KILEY, J., concur.