[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON APPLICATION FOR TEMPORARY INJUNCTION
Defendant and Counterclaim Plaintiff SCI Connecticut Funeral Services, Inc. ("SCI") has brought this Application for a Temporary Injunction to restrain Plaintiff and counterclaim Defendant Robert L. Sagarino ("Sagarino") from continuing to violate an Agreement-Not-To-Compete given by Sagarino in connection with the sale of stock in the Donald D. Sagarino Funeral Home, Inc. to SCI. SCI claims that Sagarino has violated the Agreement-Not-To-Compete by opening and operating a funeral home known as the C.R. Sagarino Funeral Home approximately two miles from the location of the Donald D. Sagarino Funeral Home, now known as the New Britain Memorial/Sagarino Funeral Home, in New Britain, Connecticut.
Facts
CT Page 6430
After a hearing on the Application for Temporary Injunction the court finds the following facts. On June 16, 1994, SCI purchased all of the stock from the Donald D. Sagarino Funeral Home, Inc. from Sagarino's mother for the sum of $700,000. SCI also purchased the real estate where the Donald D. Sagarino Home was located for the sum of $375,000.
At the time of the stock purchase, Sagarino had been a long time employee of the Donald D. Sagarino Funeral Home. As a condition of purchasing this stock, SCI required that Sagarino and other family members execute five year employment or consultant agreements and fifteen year agreements-not-to-compete. The Agreement-Not-To-Compete signed by Sagarino provided that for a fifteen year period, within a thirty mile radius of the Donald D. Sagarino Funeral Home, Sagarino would not:
 (a) directly or indirectly, alone or for the account of Covenantor, or as a partner, member, employee, advisor, or agent of any partnership or joint venture, or as a trustee, officer, director, shareholder, employee, advisor, or agent or any corporation, trust or other business organization or entity, own, manage, advise, encourage, support, finance, operate, join, control, or participate in the ownership, management, operation, or control of or be connected in any manner with any business which is or may be in the funeral, mortuary, crematory, marketing or prearranged funerals business or any business related to the above; or
 (b) induce or assist anyone in inducing in any way any employee of Corporation to resign or sever his employment or to breach an employment agreement with Corporation to its affiliates.
The Agreement-Not-To-Compete further provided that for a period of fifteen years, Sagarino:
 3. (b) Will not reveal (except pursuant to any judicial process) to any third person any difference of opinion, if there be such at any time, between Covenantor and the management of Corporation;
(d) Will not knowingly or intentionally do any act or thing detrimental to the business of Corporation; and
 (e) Will encourage and recommend the use of the Corporation's services by relative, friends and CT Page 6431 acquaintances.
In consideration for the Agreement-Not-To-Compete, SCI agreed to pay Sagarino the sum of $65,000 in 120 equal payments of $541.67, which payments SCI has been making and Sagarino has been accepting. Sagarino's mother, brother and sister also executed Agreements-Not-To-Compete which had fifteen year terms. The amounts they each were to receive under the terms of those agreements were less than the amounts to be received by Sagarino. SCI would not have purchased the business if Sagarino had refused to execute the Agreement-Not-To-Compete. There is nothing in the Employment Agreement or the Agreement-Not-To-Compete, both of which were signed by Sagarino, that makes the Agreement-Not-To-Compete dependent in any way on Sagarino's employment with SCI or the Donald D. Sagarino Funeral Home.
Sagarino's Employment Agreement with SCI expired on June 15, 1999, and, thereafter, Sagarino was employed by SCI as an employee at will. On July 29, 1999, SCI terminated Sagarino's employment after Sagarino admitted to drinking alcohol in the preparation room of the Funeral Home.
The execution of the Agreement-Not-To-Compete was crucial to SCI because it was paying a substantial amount of money for a business that had existed for many years and had established significant goodwill in the New Britain area, particularly with the Italian-American community. Attracting business in the funeral home industry is highly dependent upon personal relationships and on the family name connected with the business. People select funeral homes based upon their own or their family's previous experience with a particular funeral home and the family members who run it. There is strong "brand loyalty" to a particular funeral home and the family members who run it. Most clients are individuals whose families have previously used the same funeral home.
The Donald D. Sagarino Funeral Home was perceived as a family run business and a multi-generational institution which served several generations of its customers' families. Unlike certain business where customers return daily, or monthly, in the funeral home business families generally do not have the need to return to the same funeral home for many years. The average time for return business is nine years. Therefore, it can take a long time for a new owner to even meet a family and to develop a personal relationship with the family.
During the seven month period from the time he was terminated by SCI until February, 2000, Sagarino made very little attempt to seek employment in the funeral industry in New Britain, made very absolutely no attempt to seek employment in the funeral industry in the area outside CT Page 6432 the thirty mile distance restriction in the Agreement-Not-To-Compete, and made absolutely no attempt to seek employment in any other industry. In early 2000, Sagarino opened and began operating the C.R. Sagarino Funeral Home, located on 25 South Street, New Britain, Connecticut, approximately two miles from the Donald D. Sagarino Funeral Home. Sagarino is advertising and seeking clients from the same Italian-American community that the Donald D. Sagarino Funeral Home has traditionally served. There was evidence, introduced by Sagarino himself, that he is in fact competing with and taking customers from the Donald D. Sagarino Funeral Home. Two out of the three prepaid funeral contracts which the C.R. Sagarino Funeral Home has secured since it has been in operation were obtained by means of the transfer of those funeral contracts from the Donald D. Sagarino Funeral Home.
Discussion of Law and Ruling
A party is entitled to a temporary injunction if the party establishes that: (i) there is a probability of success on the merits and there is no other adequate remedy at law, and (ii) substantial and irreparable injury is imminent. Connecticut Association of Clinical Laboratories v.Connecticut Blue Cross, 31 Conn. Sup. 110, 119 (1973). Irreparable injury and lack of an adequate remedy at law is considered to be automatically established where a party seeks to enforce a covenant not to compete.Lampson Lumber Co. v. Caporale, 140 Conn. 679, 685, 102 A.2d 875 (1954);Welles v. O'Connell, 23 Conn. Sup. 335, 337 (1962).
In Welles v. O'Connell, 23 Conn. Sup. 335, 337 (1962) the court stated that where a party has engaged in "a breach of a restrictive covenant there can be no question that the plaintiff is entitled to an injunction restraining the breach, irrespective of whether the damage he will suffer is great or small." (quoting Lampson Lumber Co. v. Caporale, 140 Conn. 679,685, 102 A.2d 875 (1954).
In Gartner Group, Inc. v. Mewes, 7 C.S.C.R. 275 (Jan. 3, 1992, Mottolese, J.) this court considered the requirement of proving irreparable harm in an action to enjoin the breach of a covenant not to compete in an employment contract:
 While ordinarily proof of imminent harm is essential, in this type of case there is no such requirement. It has long been recognized in this state that a restrictive covenant is a valuable business asset which is entitled to protection. Torrington Creamery, Inc. v. Davenport, [126 Conn. 516], [126 Conn. 515], at 521. Irreparable harm would invariably result from a violation of the CT Page 6433 defendant's promises. Mattis v. Lally, 138 Conn. 51, 56; Welles v. O'Connell, 23 Conn. Sup. 335, 337. The reason for this is that such a plaintiffs actual injury is not susceptible of determination to its entire extent but is estimable largely by conjecture and prediction. Case v. Zeiff, 10 Conn. Sup. 530, 532.
. . .
 [W]hile the plaintiff could maintain a claim for damages as to each violation that causes injury the difficulty of proof and the inefficiency of repetitive suits render inadequate the use of successive remedies at law, and injunctive relief is therefore warranted to protect the plaintiff from harm which the restrictive covenant was intended to prevent.
A party challenging the enforceability of a restrictive covenant has the burden of proving that the covenant is not enforceable, Mathis v.Lally, 138 Conn. 51, 55, 82 A.2d 155 (1955); Scott v. General Iron Welding Co., 171 Conn. 121, [171 Conn. 132], (1976). "`[C]ourts have generally been more willing to uphold promises to refrain from competition made in connection with sales of goodwill than those made in connection with contracts of employment.'" Hilb, Rogal Ham Company of Hartford v. Pawlich, No. CV 94 0705183, 1995 WL 91431 (Conn.Super. March 31, 1995, Corradino, J.) Seealso, Nesko v. Fontaine, 19 Conn. Sup. 160, 110 A.2d 631 (1954). Restrictive stipulations given at the time of a sale of a business are more readily enforceable than in the case of employer-employee relationship. When a covenant not to compete is given in connection with a sale of business, "`a large scope for freedom of contract and a correspondingly large restraint of trade' is allowable." Samuel Stores,Inc. v. Abrams, 94 Conn. 248, 253, 108 A. 541 (1919) "[In] a restrictive covenant between an employer and an employee on the other hand, there is a `small scope for the restraint of the right to labor and trade and a correspondingly small freedom of contract.'" Id. This is because "restrictive covenants add to the value of the business leased or sold and add to the value of business leased or purchased." Hilb, supra.
The value of good will purchased by a vendor of a business which has obtained a restrictive covenant as part of the purchase of a business was explained in as follows in Mathis v. Lally, 138 Conn. 51, 54-55, 82 A.2d 155
(1951).
 Good will in the sense here used means an established business at a given place with the patronage that CT Page 6434 attaches to the name and the location. It is the probability that old customers will resort to the old place . . . Having paid for "good will", the plaintiff was entitled to have reasonable limitations placed upon the activities of the defendant to protect his purchase. If the plaintiff could hold the patronage of the defendant's old customers and secure that of others who might be lacking for the services of a barber at the established location, he would be reasonably assured of carrying on the business profitably. If, however, the defendant could open up another shop in the immediately vicinity, it was to be expected that his old personal customers and others would seek his services.
(citations omitted)
In upholding the restrictive covenant given by the seller of the business in Mathis, the Court wrote "The plaintiff however, has purchased the business for a substantial consideration and in good faith, relying on the restrictive clause for protection. . . . To excuse [the defendant] from the performance of his agreement would amount to returning to him a large part of what he has sold and would work a real hardship on the plaintiff". Id. at 55-56.
Sagarino has argued that the Agreement-Not-to-Compete should be viewed as a covenant contained in an employment contract because he was not the seller of the business. This argument is untenable for three reasons. First, the employment agreement between Sagarino and the Donald D. Sagarino Funeral Home, Inc. does not contain the Agreement-Not-To-Compete. That agreement was given specifically as a condition of the sale of the business.
Second, Sagarino has received and will continue to receive over the next four and one half years $65,000 for his Agreement-Not-To-Compete, which funds were or will be paid for the good will of the business and would not have been paid had the Funeral Home not been sold to SCI. This amount ($65,000) was in addition to amounts that Sagarino received as an employee of the Donald D. Sagarino Funeral Home.
The final problem with Sagarino's attempt to characterize the Agreement-Not-ToCompete as one which did not arise from the sale of a business is that it is well settled that an agreement not to compete will be considered to have been given in connection with the sale of a business even if the covenantor is not the seller, if the covenant was reasonably necessary for the protection of the good will of the business. CT Page 6435 If the covenantor was active in the management of or intimately involved with the business, as Sagarino was, the covenant will be considered to have been given in connection with the sale of the business. Domurat v.Mazzaccoli, 138 Conn. 327, 330, 84 A.2d 271 (1951); Francis M. Dougherty,Enforceability of Sale of Business Agreement Not to Compete AgainstNonsigner or Nonowning Signer, 60 A.L.R.4th 294; Business Records Corp.v. Lueth, 981 F.2d 957, 960 (7th Cir. 1992) (covenant given by nonseller will be considered covenant given in connection with sale of business if covenant was a condition precedent to the sale, covenant was incorporated into the sale agreement, and if covenant not to compete was executed at the same time as the sales agreement); Arctic Dairy Co. v. Winans,255 N.W. 290, 267 Mich. 80 (1934) (covenant not to compete signed by sons of owner at time of sale of dairy business who were key employees in business was considered to have been given to protect the interests of the purchaser because sons had the same name as that of business, knew details of business, assisted in managing business, even though sons did not receive sales proceeds); Drumheller v. Drumheller Bag Supply,420 S.E.2d 331, 334-35 (Ga.App. 1992) (covenant considered as given in connection with the sale of stock by sons where business was a close knit operation dependent upon sons' service and skills).
An anti-competitive covenant ancillary to a lawful contract is enforceable if the restraint upon trade is reasonable. Elida, Inc. v.Harmor Realty Corporation, 177 Conn. 218, 225, 413 A.2d 1226 (1979). The "test of its validity is the reasonableness of the restraint it imposes. To meet this test successfully, the restraint must be limited in its operation with respect to time and place and afford no more than fair and just protection of the party in whose favor it is to operate, without unduly interfering with the public interest." Id. at 226; Mattis v.Lally, 138 Conn. 51, 54, 82 A.2d 155 (1951); Lampson Lumber Co. v.Caporale, 140 Conn. 679, 683, 102 A.2d 875 (1954).
In Scott v. General Iron Welding Co., 171 Conn. 132, 137, 368 A.2d 111
(1976) the Connecticut Supreme Court enumerated five criteria by which to determine the reasonableness of a restrictive covenant in an employment contract: (1) the length of time the restriction is to be in effect; (2) the geographic area covered by the restriction; (3) the degree of protection afforded to the party in whose favor the covenant is made; (4) the restrictions on the employee's ability to pursue his occupation; and (5) the extent of interference with the public's interests. This case does not involve a covenant between an employer and employee, and, as stated above, the anti-competitive covenant is construed less strictly when it has been given in connection with the sale of a business. However, the criteria set forth in Scott provide a useful framework for evaluating the reasonableness of the restrictive covenant at issue here. CT Page 6436
SCI presented evidence that the average frequency with which a customer will use the services of a funeral parlor is nine years. Therefore, a family who used the services of the Doanld D. Sagarino Funeral Home immediately prior to the sale to SCI in 1994, on average, would not need to use those services again until 2003. In light of the nature of the business and the average time between "repeat" business, the fifteen year time restriction contained in the Agreement-Not-To-Compete is not unreasonable. Depending on the circumstances, Courts in this state have upheld restrictions that are longer in time than fifteen years. In Cookv. Johnson, 47 Conn. 175, 178 (1879) the Court upheld a lifetime covenant given in connection with the sale of a medical practice. See also, Wellesv. O'Connell, 23 Conn. Sup. at 338-39 citing Chandler, Gardner Williams, Inc. v. Reynolds, 250 Mass. 309, 145 N.E. 476 (1924) (upholding restriction of 10 years after termination of employment given in connection with the sale of a business; Timmermon v. Dever, 52 Mich. 34,17 N.W. 230 (1883) (upholding 10 year restriction in connection with the sale of a medical practice); Styles v. Lyon, 87 Conn. 23, 86 A. 564
(1913) (upholding lifetime restriction in physician employment agreement).
Because of the nature of the funeral business which is very dependent upon personal relationships developed over a long period of time, the duration restriction in the Agreement-Not-To-Compete is reasonable to protect the good will purchased by SCI.
The thirty mile radius from the location of the Donald D. Sagarino Funeral Home at 109 North Street in New Britain, Connecticut is also reasonable to protect the good will purchased by SCI. SCI presented evidence that the Donald D. Sagarino Funeral Home customer base extends to such radius. See, Scott v. General Iron Welding, Co.,171 Conn. 132, 138-39 (1976) (a restrictive covenant in the employment context which was statewide upheld as "reasonably necessary to protect the interests of the defendant employment."); Eastcoast Guitar, Inc. v. Tedesco, CV 99 0337066 S, 2000 Conn. Super. LEXIS 320 * 4 (Conn.Super. Feb. 7, 2000) (geographic scope of a non-compete clause in the employment context limited to include Fairfield, Litchfield and New Haven Counties as well as any location within thirty miles radius from the employer's business).
Because of the personal nature of the services provided by a funeral home director, the good will purchased extends to a larger geographical area than otherwise would be the case for many other businesses. Accordingly, the thirty mile radius is not unreasonable to protect the good will purchased by SCI from Sagarino's family. CT Page 6437
In the context of a restrictive covenant given in connection with the sale of a business, the impact of the covenant on the covenantor will be given little consideration. "Even in cases where the seller will experience significant hardship from the enforcement of a restrictive covenant, the court will enforce the covenant if it has resulted from the sale and purchase of a business for which the buyer has paid substantial consideration". Mathis v. Lally, supra, at 55-56. Sagarino has failed to meet his burden of establishing that the covenant here works any hardship on him. As stated above, he made very little effort to seek employment with other funeral homes in New Britain and no effort to seek employment in the funeral home industry outside of the thirty mile distance restriction. He made no effort to seek any other type of employment, and presented no evidence as to his education level which might have permitted the court to conclude that it would have been impossible for him to obtain any type of alternate employment. Sagarino presented no evidence as to why he could not seek employment in Fairfield County or other areas within Connecticut which fall outside the thirty mile radius of the Agreement-Not-To-Compete.
Section 1(b) "Non-Competition" of the Agreement-Not-To-Compete states in part:
 This covenant shall not be held invalid or unenforceable because of the scope of the territory or actions subject hereto or restricted hereby, or the period of time within which such covenant is imperative; but the maximum territory, the action subject to such covenant and the period of time in which such covenant is enforceable, respectively, are subject to determination by a final judgment of any court which had jurisdiction over the parties and subject matter.
It is clear from this clause that it was the parties' intention that in the event that part of the Non-Competition covenant is unenforceable, the court should modify the language to include a covenant that would be enforceable.
There was undisputed evidence that 70-80% of the business of the Donald D. Sagarino Funeral Home came from within a ten mile radius of its location, 109 North Street, New Britain. SCI has indicated that would consent to a rewriting of the provision to limit it to a ten mile radius from the North Street location of Donald D. Sagarino Funeral Home.
The protection of the goodwill generated by the Sagarino family name in the funeral business was a primary purpose for the CT Page 6438 Agreement-Not-To-Compete signed by Sagarino. There has been evidence that the funeral home which Sagarino opened in February of 2000, the C.R. Sagarino Funeral Home, has caused much confusion with the customers of SCI and the Donald D. Sagarino Funeral Home due to the use of the Sagarino name. Such confusion would continue to exist if Sagarino operated any funeral home using the name Sagarino or worked for any funeral home which mentioned the Sagarino name in its advertisements within a thirty mile radius of 109 North Street, New Britain. As currently written, the Agreement-Not-To-Compete prevents such operation or employment by Sagarino. It also prevents him from being employed by any funeral, mortuary or crematory business within a thirty mile radius where the name of the business does not include the name Sagarino and where the business does not advertise the Sagarino name. Therefore, the court would be inclined to narrow the scope of the Agreement-Not-To-Compete to allow Sagarino to be employed in the funeral home business outside of a ten mile radius from New Britain, provided that employment did not include the advertisement of the Sagarino family name. However, Sagarino has not requested such a narrowing, but has specifically argued that the court should not rewrite the restrictive covenant.
The court finds that it is probable that SCI will prevail on the merits, SCI is suffering irreparable harm from Sagarino's operation of the C.R. Sagarino Funeral Home, the restrictions contained in the Agreement-Not-To-Compete are reasonable in area and duration, are necessary to protect the goodwill for which SCI has paid Sagarino and his mother substantial consideration, there is no evidence that the restrictions work an undue hardship on Sagarino and there is no evidence that enforcement of the Agreement-Not-To-Compete will have an impact on the public interest.
Based on the foregoing, the Application for Temporary Injunction is Granted and IT IS HEREBY ORDERED: that Robert L. Sagarino shall refrain and desist, directly or indirectly, alone or for the account of himself, or as a partner, member, employee, advisor, or agent of any partnership or joint venture, or as a trustee, officer, director, shareholder, employee, advisor, or agent or any corporation, trust, or other business organization or entity, from owning, managing, advising, encouraging, supporting, financing, operating, joining, controlling, or participating in the ownership, management, operation, or control of or be connected in any manner with the C.R. Sagarino Funeral Home, L.L.C., or in any other manner violating the Agreement-Not-To-Compete dated June 14, 1994 by and between Robert L. Sagarino and Donald D. Sagarino Funeral Home, Inc. until further order of this court.
By the court, CT Page 6439
Aurigemma, J.